FRANK E. HAWKES *vs.* ANNIE KEHOE & another.

Norfolk.   November 14, 1906. — January 2, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Contract*, Performance and breach, Construction.

In this Commonwealth, where there is a contract for the conveyance of land with the buildings thereon for an entire price and the value of the buildings constitutes a large part of the total value of the estate and an important part of the subject matter of the contract, and before the time fixed by the contract for the conveyance the buildings are destroyed by fire without the fault of either party, the contract no longer is binding, because a substantial part of its subject matter has ceased to exist.

Where one agrees to convey a certain parcel of land "and the buildings thereon" on a certain day in exchange for a conveyance of other real estate, and the buildings are almost of equal value with the land, and the contract provides that the premises at the time of delivering the deeds are to be "in the same condition in which they now are, reasonable use and wear of the buildings thereon alone excepted," and before the day named for the exchange of the deeds the buildings are destroyed by fire without the fault of either party, the failure to convey the land with the buildings thereon is not a breach of the contract, because in making it the parties contemplated the continued existence of the buildings as the foundation of the agreement and provided only against a change in their condition while existing.

CONTRACT, for the alleged breach of an agreement in writing printed below.   Writ dated June 13, 1905.

The defendant demurred to the declaration.   The Superior Court overruled the demurrer as to the first and second counts,

and the plaintiff discontinued as to the other counts of his declaration. The breaches of contract alleged respectively in the first and second counts are stated in the next to the last paragraph of the opinion.

The contract declared upon was as follows:

"Agreement made this 12th day of May, A. D. 1905, between John P. Kehoe and Annie Kehoe of Revere, County of Suffolk and Commonwealth of Massachusetts, of the first part, and Frank E. Hawkes of Boston, County of Suffolk and said Commonwealth of the second part.

"The party of the first part hereby agrees to sell, and the party of the second part to purchase, a certain estate situated in Revere, County of Suffolk and said Commonwealth, and bounded as follows: A certain parcel of land containing 5964 square feet, more or less, and the buildings thereon, situated on the boulevard, and known and numbered as No. 241 Boulevard, and running through to Ocean avenue. Being the same premises adjoining the Johnstown Flood building.

"Said premises are to be conveyed on or before June 12, 1905, by a good and sufficient deed of the party of the first part, conveying a good and clear title to the same, free from all incumbrances except leases and taxes for the current year, and in consideration for such deed and conveyance, the party of the second part agrees to convey by a good and sufficient deed to the party of the first part a certain estate situated in Dorchester, County of Suffolk and Commonwealth of Massachusetts, bounded as follows: A certain parcel of land containing 21,192 square feet, more or less, of which 16,448 square feet, more or less, are situated on Fowler street, and the balance, 4744 square feet, more or less, are situated on Greenwood street, free and clear from all incumbrances except restrictions of record, if any, and taxes for the current year. And the said party of the second part agrees to pay in cash, in addition to said conveyance, upon the delivery of said deed by the said party of the first part, the sum of twelve thousand dollars.

"Full possession of all said premises, subject to occupancy of present tenants, is to be delivered to the respective parties at the time of the delivery of the said deeds, the said premises to be

then in the same condition in which they now are, reasonable use and wear of the buildings thereon alone excepted, leases and rents, water insurance to be adjusted to date of transfer. All leases and rents start the first of May.

" The deeds are to be delivered and the consideration paid at the Registry of Deeds.

" In witness whereof the said parties hereto, and to another instrument of like tenor, set their hands and seals on the day and year first above written.

" In presence of
F. C. N. Wilcox.

" John P. Kehoe          [seal].
Annie Kehoe          [seal].
Frank E. Hawkes "  [seal].

The case was referred to an auditor who filed a report. He found that the plaintiff had no personal interest in the transaction, but acted merely at the request and for the benefit of A. Wilbert Starratt and William A. Woodman, both of Boston. The lots in Dorchester were owned of record by Woodman, who held title thereto for the benefit of himself and Starratt in equal shares, and these lots of land were at the time of the making of the contract, and on June 12, 1905, of a fair market value of $3,100. The Revere property was owned by the defendant Annie Kehoe, and at the time of the making of the agreement consisted of fifty-nine hundred and sixty-four square feet of land on the Boulevard, so called, at Revere, bounded on the rear by a street known as Ocean Avenue, upon which land there was in the front a frame building with two stores on the first floor and four tenements above. On the rear of the land was a frame building known as the Nickel Palace, designed for theatre and other amusement purposes.

The auditor found that at the time of the making of the agreement and on June 12, 1905, the land was of a fair market value of $10,000, and that at the time of the making of the agreement the buildings thereon were of a fair market value of $9,000. On the night of June 3, 1905, these buildings on the premises of the defendant Annie Kehoe at Revere were wholly destroyed by an accidental fire and were not rebuilt.

The facts as to demand and refusal of performance are described sufficiently in the opinion.

The case was heard upon the auditor's report by *Aiken*, C. J. He admitted against the objection of the defendants the evidence of Starratt as to his interest in the contract for exchange and in the Dorchester land. He found as a fact that the defendants before the fire never knew of any one being interested in the agreement other than the plaintiff Hawkes.

The defendants asked for eleven rulings, of which the sixth and seventh, relating to insurance money, were given by the Chief Justice. The other rulings requested, which were refused by him, were as follows:

1. Upon all the evidence the plaintiff cannot recover in this action on either the first or the second count.

2. That the plaintiff was never ready or able to carry out or perform his part of the agreement declared on, and cannot recover in this action.

3. That the fact that one Starratt assumed to act for the plaintiff without the defendants' knowledge or consent and without any transfer of the agreement on the part of the plaintiff does not enable the plaintiff to maintain this action by any acts of Starratt.

4. The plaintiff being wholly irresponsible financially and unable to carry out his part of the agreement declared on cannot maintain this action, if made use of as an irresponsible man to sign the agreement by other parties who knew his irresponsibility, and never informed the defendants thereof.

5. If this action could be maintained by the plaintiff by reason of any acts of Starratt shown in the evidence the inability of Starratt on June 12, 1905, to pay the money agreed upon except upon a mortgage of the defendant's property at that time tentatively made, prevents the plaintiff from recovering in this action.

8. There is nothing in the agreement whereby the plaintiff can recover from the defendant by reason of the building upon the premises of the defendants being accidentally destroyed by fire before the termination of the agreement.

9. The accidental destruction by fire of the building on the defendants' land excused both the defendants and the plaintiff from the performance of the written agreement declared on.

10. The written agreement declared on was made by the plaintiff and the defendants upon the implied condition that

the buildings upon the defendants' land should be in existence at the time of performance, and their accidental destruction by fire before even any attempt at performance of the agreement on the part of the plaintiff renders the defendants not liable in this action.

11. The plaintiff upon all the evidence cannot recover on the second count.

The Chief Justice found that the plaintiff was entitled to damages from the defendants for failure to convey the premises in the condition in which they were at the date of the signing of the agreement, reasonable use and wear thereon excepted, and that they were not excused from performance thereof by reason of the fire; and found that the plaintiff was entitled to recover of the defendants the sum of $3,900. He found for the plaintiff in that amount with interest; and the defendants alleged exceptions.

*H. Dunham*, (*B. B. Dewing* with him,) for the defendants.

*W. A. Rollins*, for the plaintiff.

SHELDON, J. One who has bound himself by a positive and absolute agreement for the performance of something not in itself unlawful is not released from his obligation by the mere fact that in consequence of unforeseen accidents the performance of his contract has become unexpectedly burdensome or even impossible; he must respond in damages for the breach of his agreement. *Harvey* v. *Murray*, 136 Mass. 377. *Drake* v. *White*, 117 Mass. 10. But it is equally well settled that where from the nature of the contract it appears that the parties must from the beginning have contemplated the continued existence of some particular specified thing as the foundation of what was to be done, then, in the absence of any warranty that the thing shall exist, the contract is to be construed not as a positive contract, but as subject to an implied condition that the parties shall be excused in case before breach performance becomes impossible from the accidental perishing of the thing without the fault of either party. Gray, J. in *Wells* v. *Calnan*, 107 Mass. 514, 516, quoting *Taylor* v. *Caldwell*, 3 B. & S. 826. The same doctrine has been affirmed in other decisions of this court. *Butterfield* v. *Byron*, 153 Mass. 517, and cases there cited. *Young* v. *Chicopee*, 186 Mass. 518. *Marvel* v. *Phillips*, 162 Mass. 399.

See also *The Tornado*, 108 U. S. 342, 351, 352; *Dexter* v. *Norton*, 47 N. Y. 62; *Krause* v. *Board of School Trustees*, 66 N. E. Rep. 1010; *Dow* v. *State Bank*, 88 Minn. 355; *Vogt* v. *Hecker*, 118 Wis. 306; *Krell* v. *Henry*, [1903] 2 K. B. 740; *In re Hull*, [1905] 1 K. B. 588. The misfortune which has occurred releases both parties from further performance of the contract and gives no right to either to claim damages from the other. *Elliott* v. *Crutchley*, [1903] 2 K. B. 476; *S. C.* [1904] 1 K. B. 565. We need not stop to consider the different rules which have been laid down in England and in this Commonwealth as to the right of either party, in such event, to recover for payments made or services rendered or materials supplied to the other before further performance has become excused. See the cases cited *supra*.

The plaintiff contends, however, that the rule which we have now stated does not apply to cases like this. He argues that in this Commonwealth, where a contract is made for the future conveyance of land with buildings standing thereon, with no provision as to the contingency of the buildings being destroyed by fire before the time appointed for the conveyance, the loss by such a fire falls wholly upon the vendor. *Wells* v. *Calnan*, 107 Mass. 514. *Thompson* v. *Gould*, 20 Pick. 134. From this he deduces the conclusion that the purchaser in such a case has a right either to require the vendor to make a conveyance of the land with compensation for the loss of the buildings, as in *Phinizy* v. *Guernsey*, 111 Ga. 346, or to hold the vendor in damages for failing, though by reason of his inability, to convey the estate, including both land and buildings, as he had agreed to do.

We need spend no time upon the numerous cases in England and in this country which the industry of counsel has brought to our notice as to the rights of parties to such agreements upon a total or partial destruction of the buildings by fire. See the cases collected in 29 Am. & Eng. Encyc. of Law, (2d ed.) 712 *et seq.*, and in Ames, Cases in Eq. Jur. 228, note 2. We are of opinion that in this Commonwealth, when, as in this case, the conveyance is to be made of the whole estate, including both land and buildings, for an entire price, and the value of the buildings constitutes a large part of the total value of the estate, and the terms of the agreement show that they constituted an

important part of the subject matter of the contract, it is now settled by the decision in *Wells* v. *Calnan*, 107 Mass. 514, that the contract is to be construed as subject to the implied condition that it no longer shall be binding if, before the time for the conveyance to be made, the buildings are destroyed by fire. The loss by the fire falls upon the vendor, the owner; and if he has not protected himself by insurance, he can have no reimbursement of this loss; but the contract is no longer binding upon either party. If the purchaser has advanced any part of the price, he can recover it back. *Thompson* v. *Gould*, 20 Pick. 134, 138. If the change in the value of the estate is not so great, or if it appears that the buildings did not constitute so material a part of the estate to be conveyed as to result in an annulling of the contract, specific performance may be decreed, with compensation for any breach of agreement, or relief may be given in damages. *Kares* v. *Covell*, 180 Mass. 206. *Davis* v. *Parker*, 14 Allen, 94.

It is true, however, that the principle just stated would not be applicable to an agreement which contemplated and provided for the event which has happened, — if, that is, in such a case as this, the vendor has made himself answerable for the continued existence of the buildings. *Allyn* v. *Allyn*, 154 Mass. 570. The agreement in this case provides that the defendants shall convey to the plaintiff a certain parcel of land "and the buildings thereon," and that the premises at the time of delivering the deeds are to be "in the same condition in which they now are, reasonable use and wear of the buildings thereon alone excepted." The plaintiff contends that these words were inserted for his protection (*Tripp* v. *Smith*, 180 Mass. 122, 126); that they constitute a part of the contract, and are not to be ignored; and that they are no less applicable when the buildings have been totally consumed than would be the case if they simply had been mutilated by tenants or charred by a small fire. And he claims that the exception of "reasonable use and wear of the buildings" furnishes an additional reason for holding that injury by inevitable accident is not excepted. *Harvey* v. *Murray*, 136 Mass. 377, 378. Accordingly he contends that he has a right to hold the defendants in damages for their failure to convey to him the estate with the buildings in the same condition that

they were in at the date of the contract. *Combs* v. *Fisher,*
3 Bibb, 51. *Green* v. *Kelly*, Spencer, 544. *Goddard* v. *Bedout,*
40 Ind. 114. *Morgan* v. *Hymer,* 18 Ky. L. R. 639. But of
these cases *Combs* v. *Fisher* simply decides that after the ven-
dor has recovered a judgment at law against the purchaser
upon bonds given for the price for land and buildings, thus
affirming the contract, the latter may in equity have his dam-
ages from the previous destruction of the buildings set off
against such judgment. In *Goddard* v. *Bedout* the defendant
had put himself in the position of a lessee, and it is pointed out
in *Wells* v. *Calnan*, 107 Mass. 514, 517, 518, that cases in which
a lessee is held to pay rent or make repairs notwithstanding the
destruction of the buildings during the term are not applicable
here. In *Morgan* v. *Hymer* there was an express covenant by
the vendor to keep the house in good repair. *Green* v. *Kelly,*
the only one of these cases which fully supports the plaintiff's
position, was rested mainly upon the authority of cases as to
tenants, which we have seen not to be applicable here. There
is here no express agreement on the part of the vendors war-
ranting the continued existence of the buildings on their land,
and no provision relative to their destruction by fire, as there
was in *Allyn* v. *Allyn,* 154 Mass. 570. The agreement seems
rather to have been based upon the assumption that its subject
matter, land and buildings, would continue in existence until the
time should arrive for the making of the conveyance and to pro-
vide against any change in their condition while so existing
being made or allowed by the vendors to the possible detriment
of the purchaser. The parties contemplated this continued ex-
istence as the foundation of their agreement. It is as if in the
case of *Dexter* v. *Norton,* 47 N. Y. 62, there had been inserted in
the agreement a stipulation that the seller would not allow the
cotton therein mentioned to become wet by salt water or depre-
ciated in quality from other causes, but would deliver it in sound
condition. All the reasoning in the opinion of the court in that
case would remain unaffected and the decision must have been
the same. In *Howell* v. *Coupland,* 1 Q. B. D. 258, the contract
was for the future sale of certain potatoes, to be "good and mar-
ketable ware"; and this contract was held to be subject to the
implied condition that the parties should be excused if before

breach performance became impossible from the perishing of the potatoes without default of the contractor. This case must stand in the same way as if a large and material part of the land had been swallowed up by an earthquake or some other convulsion of nature, perhaps leaving the buildings standing on what land was left; for *Wells* v. *Calnan, ubi supra*, has settled the rule in this Commonwealth that the destruction of the buildings is not to be distinguished from the loss of a material part of the land. All the arguments based upon this stipulation of the contract would be as applicable then as now; evidently they could not then avail, and they cannot avail now.

We need not consider the question whether it appeared that the plaintiff, having made no actual tender of performance and having no other ability to pay the necessary money than stated in the auditor's report, had put himself in a condition to maintain the action. Apparently, if the defendants had adopted the plaintiff's view, and had offered to make a conveyance to him with compensation for the loss of the buildings, he could not have obtained the money upon the proposed mortgage, for his arrangement with the intended mortgagor was based upon the contingency of the defendant's premises being conveyed in the condition in which they were when the agreement was signed. See *Foternick* v. *Watson*, 184 Mass. 187; *Lowe* v. *Harwood*, 139 Mass. 133, 135; *Gormley* v. *Kyle*, 137 Mass. 189; *Carpenter* v. *Holcomb*, 105 Mass. 280, 285; *Cook* v. *Doggett*, 2 Allen, 439, 441; *Buttrick* v. *Holden*, 8 Cush. 233; *Howland* v. *Leach*, 11 Pick. 151, 155.

The demurrer was rightly overruled. The first count simply sets out the agreement and avers that the plaintiff was ready and willing to carry it out and so notified the defendants, but they "flatly refused" to perform on their part. The second count avers in substance that the fire which destroyed the buildings was due to the defendants' negligence; and it also, like the first count, contains an averment that the defendants flatly refused to perform their agreement.

The order overruling the demurrer must be affirmed; and because of the failure to grant the first of the defendants' requests for instructions, the exceptions must be sustained.

*So ordered.*