169·P.2d 850

**KRESSE v. RYERSON et ux.**

No. 4836.

Supreme Court of Arizona.

June 17, 1946.

Marks & Marks, of Phoenix, for appellant.

John M. Levy, of Phoenix, for appellees.

LaPRADE, Judge.

This is an appeal from a judgment decreeing specific performance of a contract to convey real estate. The appellant, vendor, entered into an agreement on July 17, 1944, with the appellees, for the sale and purchase of a parcel of real estate in the city of Phoenix. The agreement called for a purchase price of $4,750 upon the following terms and conditions: $1,000 as a down payment and the balance to be paid at the rate of $75 per month, the first payment to begin September 15, 1944. Possession was to be given to the appellee on August 15, 1944. The agreement was placed with a title company and escrow instructions were entered into in accordance with the contract. The buyers deposited the sum of $1,000 with the title company.

The title company discovered that the seller had previously conveyed the property to one Agnes Eppich, whose marital status was not disclosed. Thereafter Agnes Eppich reconveyed the real estate back to the seller. In this deed her marital status was not disclosed. The title company called this situation to the attention of the seller and requested her to furnish proof by way of affidavit of some one who knew the facts as to the marital status of Agnes Eppich from and after the time she ac-

quired title and to the time she reconveyed. The seller declined, or was unable to supply this proof, though apparently she made some attempt in this behalf, and from time to time advised the title company of her efforts in this behalf. The seller did not put the purchasers in possession on August 15, 1944, or at any other time. The purchasers did not tender or make the monthly payments required under the contract.

The purchasers at no time demanded possession, nor did the seller demand the specified monthly payments. It may be fairly deduced from the pleadings, testimony, and conduct of the parties, that each of them waived these specific requirements. The purchasers were at all times ready, able and willing to proceed with the contract. Their delay was occasioned by the fact that the vendor could not give a merchantable title. The conduct of the seller indicates that she did not expect the monthly payments for the same reason. At the time the contract was entered into the premises were rented and the seller continued to collect the rents. On December 7, 1944, a conference was had at the office of the title company, at which both parties were present. At this conference the purchasers agreed that they would accept title to the real estate subject to the cloud existing as to the possibility that a husband of Agnes Eppich might make some claim thereto. The title company requested the purchasers to write that they would accept a guaranteed title containing an exception as to the apparent interest of any husband of Agnes Eppich. This they did, and in this communication there was also included the following paragraph: "It is understood, however, that a new set of escrow instructions are to be entered into and between the Seller and Buyers, and possession of said property are to be given us not later than December 15th, 1944, under the same terms and conditions of the present escrow instructions, and all taxes, rents to be prorated as of December 15, 1944."

Mr. John M. Levy, attorney for the plaintiff, referring to the conference had in the office of the title company, testified as follows: "After the conference broke up I walked out with Mrs. Kresse and we went up to the corner and stood there talking and I asked Mrs. Kresse, told her that the only fair thing to do is to make reparations on taxes, interest and rentals and everything up to December 15th, 1944, and taxes as of that date as well, and she had collected the rents all this time and she stated that was perfectly satisfactory, I am glad to get this over with; and in pursuance of that conversation I prepared a letter which is in evidence here and it was signed by the Ryersons and delivered to the title company, and that is all."

On December 14, 1944, the seller sent purchasers and the title company the following cancellation notice:

Because of your failure to perform within a reasonable time under the terms and conditions of the Agreement for the sale of

Lot Twelve (12) Block One (1) White's Subdivision, under the terms and conditions of that certain Agreement entered into the 17th day of July, 1944, between Lucy Kresse and Paul M. Ryerson and Jennie S. Ryerson, husband and wife, and your further failure to perform under the terms and conditions of those certain Escrow Instructions concerning the said sale, dated July 18, 1944.

"You are hereby notified that Lucy Kresse elects to, and does hereby, cancel any agreements heretofore entered into for the sale of the above described property to the Ryersons, and hereby demands return to her of any and all papers executed by her pursuant to said contracts."

The case was tried to the court without a jury. The judgment directed the seller to execute and deliver to the plaintiffs a good and sufficient conveyance according to the agreement of July 18, 1944, and subject to any claims of the husband, if any, of Agnes Eppich.

Appellant has set forth six assignments of error. The first five of these reach the same conclusion, and are to the effect that the court was in error in requiring specific performance of the contract in that the plaintiffs did not sustain the allegation in paragraph IV of their complaint, which read as follows: "Plaintiffs have carried out all the terms and conditions on their part to be performed, and have fully performed under the terms of said written agreement. * * *"

It is the contention of the appellant that the plaintiffs admitted that they had not tendered or made the stipulated monthly payments of $75. Appellant's other assignment of error is as follows: "The court erred in entering judgment for the plaintiff requiring specific performance of the defendant-appellant for the reason that the buyers-plaintiffs-appellees, without right, demanded the seller-defendant-appellant to enter into a new contract, a contract which the seller did not make. * * *"

Appellant submits the following legal propositions in support of the assignments of error:

1. "The remedy of specific performance is an equitable one. These equitable maxims apply: He who seeks equity must do equity. He who comes into equity must come with clean hands.

2. "A party to a contract may rescind it because of the substantial non-performance or the breach of the other party to it.

3. "There can be no contract in the absence of the element of agreement or of mutual assent."

It is the contention of the appellant that the purchasers were in default, not having made the monthly payments, and that as a consequence the equitable remedy of specific performance was not available to them. Appellant also argues that "If any part of the consideration fails, a party may rescind. If one party breaks an intermediary covenant of an executory contract, the other party may treat the entire contract as

rescinded. The moment a contract is made, a right is vested in each party to have it remain unaltered, and to have it perform. Citing Stohr v. San Francisco Musical Fund Soc., 82 Cal. 557, 22 P. 1125; Woodard v. Glenwood Lumber Co., 171 Cal. 513, 153 P. 951; Brown v. National Electrical Works, 168 Cal. 336, 143 P. 606; Carlson v. Sheehan, 157 Cal. 692, 109 P. 29; Fairchild, etc., v. Southern Refining Co., 158 Cal. 264, 110 P. 951.''

The contract was made and executed on the 17th day of July. The escrow instructions were signed and entered into on the 18th day of July. In each of these instruments it was provided that possession of the premises was to be given the purchaser on August 15, 1944. The original contract and the executed escrow instructions, together, constitute the full agreement.

The escrow instructions, among other things, provided that "Seller will, when requested by Escrow Agent, execute and deliver to Escrow Agent all instruments, and pay to Escrow Agent all sums, and will do or cause to be done all other things necessary to enable Escrow Agent to place title to the property in the condition provided for in these instructions, (Escrow Agent to be the sole judge thereof) and will pay all fees, costs and charges payable by Seller as provided by these instructions. Escrow Agent is hereby authorized to pay from the proceeds to the credit of Seller under this escrow all amounts necessary to procure the delivery of such instruments, and the fees and charges payable by seller as specified herein.''

Under this provision of the contract the delay occasioned by the demands of the escrow holder were authorized by the seller, and she is in no position to complain thereof.

The agreement here involved was not in any sense a conditional contract, but on the other hand was unconditional and absolute, and in all respects, was binding and enforceable. The agreements of the seller to sell and convey the property and of the purchasers to purchase the property and pay the purchase price, were in all events positive, absolute and · binding, and were not subject to and did not depend upon any contingencies or conditions whatsoever.

The general rule seems to be that in the case of a binding contract of sale, the purchaser, from the time of the contract, is the equitable and beneficial owner of the property. In Volume 66, Corpus Juris, pages 1052, 1053, Par. 811, in referring to the majority rule, it is stated as follows: "Subject to certain qualifications, the rule which is supported by the weight of authority, and which is based on the proposition that a purchaser under a binding contract of sale is in equity regarded as the owner of the property, is that the purchaser is entitled to any benefit or increase of value that may accrue to the property and must bear any loss, injury or depreciation which he may sustain without fault or negligence on the part of the vendor or of

either party; and if there is a valid and binding contract between the parties, the application of the rule is not affected by the fact that the purchase price has not been paid, the purchaser is not in possession, or, under the provisions of the contract, possession is not to be delivered until a date subsequent to that when the loss or injury occurred."

Many decisions supporting this rule are cited in the notes to this statement. To the same effect is Ruling Case Law, Vol. 27, pages 555, 556. In an annotation ·in 22 A.L.R. 575, which also cites cases from many jurisdictions as well as a previous annotation in 27 L.R.A.,N.S., 233, the author states as follows: "After the making of an unconditional contract for the sale of real property and before a conveyance is made, the purchaser is ordinarily regarded as the equitable owner. In most jurisdictions he is held on that ground to assume the risk of a partial destruction or deterioration of the property from the date of the making of the contract, if the loss is not due to a fault, of the vendor, and the vendor at the time of the loss is not in default and is able to convey a good title."

 The contract in the instant case did not specifically provide that time was of the essence, and as above pointed out, the conduct of the parties so indicated. Under the title "Specific Performance," 49 Am.Jur.Sec. 42, the following general rules are set forth, which we believe to be entirely applicable in the instant case. We quote:

"Sec. 42. Time of Performance—Time as of Essence.—It is a well-established general principle in equity that time is not ordinarily regarded as of the essence of contracts unless it is so stipulated by the express terms thereof or it is necessarily to be so implied from the character of the obligations assumed, and this is especially true as regards executory contracts for the sale of land which are considered in equity as vesting the equitable title in the purchaser subject to the claim of the vendor for the purchase money. Therefore, in the ordinary cases of sales of estates, the general object being to make a sale for an agreed sum, the time of payment is regarded in equity as formal, and as meaning only that the purchase shall be completed within a reasonable time, and substantially according to the contract, regard being had to all the circumstances. Hence, specific performance may be decreed in cases where justice requires it, even though literal terms of stipulations as to time have not been observed. * * *

"A failure on the part of the purchaser or the vendor in a contract of sale to perform his contract on the stipulated day does not, of itself, deprive him of his right to a specific performance, when he is able to comply with his part of the engagement. The purchaser does not ordinarily by a failure to make payment at the stipulated time lose his right to compel the vendor to con-

vey, for compensation for the delay may be easily adjusted by allowing interest, and the purchaser may be relieved in equity from his default even after the vendor has instituted an action to recover possession of the land.

"Where neither of the parties to a contract offers to perform his obligations under it on the day fixed for performance, they are considered equally in default. Under such circumstances, either party may relieve himself from his own default by performance or an offer to perform, and may then require the other to do so within a reasonable time."

In Restatement of the Law of Contracts, Vol. 1, Sec. 276, under the heading "Rules for Determining Materiality of Delay in Performance," we find this statement of the rule:

"(e) In a suit for specific performance of a contract for the sale or purchase of land, considerable delay in tendering performance does not preclude enforcement of the contract where the delay can be compensated for by interest on the purchase money or otherwise, unless

"(i) the contract expressly states that performance at or within a given time is essential, or

"(ii) the nature of the contract, in view of the accompanying circumstances, is such that enforcement will work injustice."

■ We do not consider that there is any merit in appellant's assignment of error that the court erred in entering judgment for plaintiff requiring specific performance, for the assigned reason that the purchasers, without right, demanded the seller to enter into a new contract that she did not make, referring to appellee's letter to the title company, wherein they specified that they would take the property subject to the outstanding interest, if any, and that possession should be given on December 15th. The judgment decrees specific performance of the original contract "subject to any claims of the husband, if any, of Agnes Eppich." The purchasers (plaintiffs) are not complaining about this judgment. They are willing to take such title as the vendor can convey, which might possibly be to their serious disadvantage, and in any event is for the benefit and advantage of the seller. The rule in this situation is set forth in 58 C.J. Sec. 55, page 900, under the subject of Specific Performance. It is there said: "(55) 2. Defects in Quality or Quantity of Estate Contracted for—a. In General. As a general rule a vendor against whom specific performance is sought cannot defend upon the ground that his interest or title is not as complete as that which he agreed to convey, and the vendee, if willing to take such title as the vendor can convey without seeking abatement, may require the vendor to perform so far as he is able, * * *".

■■ The holding of this court in the early case of Walton v. McKinney, 11

Ariz. 385, 94 P. 1122, 1123, is in conformity with the foregoing rule quoted from Corpus Juris. In this Arizona case the purchaser sought specific performance of a contract to convey real estate. The contract of sale was entered into on the 5th day of April, 1906, for a consideration of $6,000, to be paid on or before the 1st day of May, 1906. The contract called for a $500 down payment, which was made. The balance was to be due upon the execution and delivery of deed and abstract showing merchantable title. The purchaser was at all times ready, able and willing to pay the balance of the purchase price. The seller tendered a deed and abstract of title which failed to show a perfect legal and recorded title in the seller, whereupon the purchaser refused the deed. At the time of the trial it was discovered that the defect in the record title was of little consequence, and the purchaser agreed to take the property subject to the defect. The court held that the contract was not wholly executory in that there had been a partial payment of $500. In the case at bar, it may be said that the contract was not wholly executory, for the reason that the purchasers had paid $1,000 to the escrow holder. An escrow holder is the agent of both parties (30 C.J.S., Escrows, § 8) and the delivery of the $1,000 to the escrow holder was tantamount to delivery to the seller. In the Walton case, supra, the court said: " * * * It is manifest also that the conduct of Walton in refusing to accept the deed proffered by McKinney, in the face of the concededly defective title, was well within his rights. Only one circumstance could in any event, under the agreement, justify McKinney in not fully performing his agreement, and that would be his inability, through no fault of his, to so perform it. So long as it was within his power to perform, and Walton stood ready, able, and willing to do the things required of him, McKinney could not rescind. It is also clear that, so long as he was not in default, Walton had a right to waive any defect in the title, and, upon tender of the balance of the purchase price due McKinney, to lawfully demand the conveyance of the property."

■ In the instant case, the purchasers did not delay making the monthly payments intentionally or for the purpose of speculation. Time was not of the essence of the contract and in view of all the facts and circumstances, it is apparent that the purchasers were not in default. They have agreed to accept something less than they bargained for, and in equity and good conscience the seller should be compelled to live up to her bargain and convey.

For the foregoing reasons, the judgment is affirmed.

STANFORD, C. J., and MORGAN, J., concurring.