173 P.2d 765

**ROSS v. BUMSTEAD.**

No. 4777.

Supreme Court of Arizona.

Oct. 28, 1946.

Snell, Strouss & Wilmer, Jennings & Salmon and Ozell M. Trask, all of Phœnix, for appellant.

Stahl & Murphy, and Charles A. Carson, all of Phœnix, for appellee.

FARLEY, Superior Judge.

On October 21, 1942, the parties entered into a contract whereby the plaintiff agreed to sell to defendant the premises known as the "Arizona Orchard", together with all the improvements thereon, all water and ditch rights, and all personal property on the said premises. The buyer agreed to pay for said property the sum of $75,000, payable $5,000 upon the execution of the agreement, $20,000 when title insurance policy, deed and mortgage were ready for delivery, and the balance in quarterly instalments within six years. The contract recited that possession was to be given upon delivery of the title papers and deed, but when so given such possession should relate back to the date of the agreement, for the purpose of adjusting charges against the property and income from it. An inventory was to be taken of all personal property as of the date of the agreement, and one-half of the cost of packing materials and dates was to be added to the purchase price and paid by the buyer. The contract also provided that the vendor would be allowed a reasonable time, not to exceed ninety days, to meet any remedial requirement of the title insurance company, and all taxes, water assessment and insurance premiums were to be prorated as of the date of the agreement.

Following the execution of the agreement the defendant retained an auditor to conduct an inventory of the premises, and on October 29, 1942, eight days after the parties entered into the contract of sale, and while defendant was in Detroit, Michigan, the packing plant and warehouse, together with its contents, were destroyed by fire. The vendee thereupon requested the vendor to make an adjustment for the loss but the vendor refused to do so; whereupon defendant stopped payment on the $5,000 check he had given as a deposit and refused to complete the contract.

This action was then filed by the vendor to recover of the defaulting vendee the difference between the selling price as fixed by the contract made by the parties and the actual selling price to a third party. By way of defense defendant pleaded partial failure of consideration. From a judgment in favor of the plaintiff (vendor), defendant has appealed to this court.

Only two assignments of error were raised on appeal so that the issues are relatively simple of determination. Appellant contends that (1) the contract being a conditional one, and the condition not having been satisfied at the time of the destruction of the premises, the risk of loss falls upon the vendor; and (2) even if the contract is unconditional the risk of loss should fall upon the vendor.

In support of his first assignment of error appellant argues that the contract was conditional because the payment of $20,000 was not to be made until title insurance policy and deed were ready for delivery;

possession was not to be given until delivery of title papers and deed; the seller was to give a warranty deed upon payment of $25,000 of the purchase price; and because certain taxes for the year 1942 had not been paid, as well as a mortgage held by the Valley National Bank. An examination of the record fails to sustain appellant's contention that the contract was a conditional one. The findings of the trial court disclose that plaintiff was ready, willing and able to convey good title, and that arrangements had been made to release the mortgage held by the bank. It further appears from the findings that plaintiff was ready and in a position to pay the unpaid taxes on the property, and the parties contemplated that such details would be taken care of by the plaintiff at the time of the execution of the contract.

A conditional contract has been defined as " * * * an executory contract, the performance of which depends on a condition. It is not simply an executory contract, since the latter may be an absolute agreement to do, or not to do, something, but it is a contract whose very existence and performance depends on a contingency and condition." 17 C.J.S., Contracts, § 10, p. 329.

See also 8 Words and Phrases Perm.Ed. p. 415, wherein it is stated that " * * * an executory contract of sale is absolutely to sell at a future time, while a conditional contract of sale is conditionally to sell. In the one case, * * * the performance of the contract is suspended and deferred to a future time; in the other, the very existence and performance of the contract depends upon a contingency." And that rule has been adopted by this court in the case of Kresse v. Ryerson, 64 Ariz. 291, 169 P.2d 850. The contract did not depend upon any contingency, but at best its performance was suspended to a future time. As such a contract it is simply an executory contract containing unperformed but absolutely binding agreements.

Having determined that the contract is unconditional, our inquiry is directed solely to the rule of law to be applied to fix responsibility for the loss occasioned by the destruction of the packing shed during the interim between the signing of the contract and the time fixed for delivery of possession. This court, in the case of Kresse v. Ryerson, supra, undoubtedly committed itself to the so-called majority rule which holds that the risk of loss falls on the vendee; but in view of the fact that the rule as there announced was by way of obiter dictum, and the author of that opinion presided as trial judge in this action, we have re-examined the authorities and rationale of both majority and minority rules.

The early case of Paine v. Meller, 6 Ves. Jr. 349, 31 Eng.Reports 1088, first announced the majority rule, and it has been followed by a long line of cases both in England and America. 22 A.L.R. 575. The courts which have followed this rule have done so either upon the theory of an

64

equitable conversion, whereby the vendor's interest in the property has been converted by the contract from realty into personalty and the vendor holds merely the bare legal title in trust for the vendee, who holds the equitable title; or upon the theory that the beneficial incidents of ownership are in the vendee. Op.Cit., also Anno. Anderson v. Yaworski, 120 Conn. 390, 181 A. 205, 101 A.L.R. 1241.

The minority rule proceeds upon the theory that a contract for sale of realty contains an implied condition that since the vendee could not acquire all that he had bargained for by reason of the destruction of a portion of the premises, he should not be required to assume the loss. See cases cited in the Anno. 22 A.L.R. 575, at page 578, and also Hawkes v. Kehoe, 193 Mass. 419, 79 N.E. 766, 10 L.R.A.,N.S., 125, 9 Ann.Cas. 1053; Anno., 41 A.L.R. 1272.

■ In this jurisdiction, both reason and authority require our reaffirmance of the majority rule as stated in Kresse v. Ryerson, supra. It is our view that the vendee under the contract had all the beneficial incidents of ownership, in that all income and charges were to be adjusted as of the date of the agreement. As was said by Lord Eldon in the case of Paine v. Meller, supra, " * * * As to the mere effect of the accident itself, no solid objection can be founded upon that simply; for if the party by the contract has become in equity the owner of the premises, they are his to all intents and purposes. They are vendible as his, chargeable as his, capable of being incumbered as his; they may be devised as his; they may be assets and they would descend to his heir. * * *"

■ The authorities are numerous in holding that the rule placing the risk of loss on the vendee was the rule at common law. Sewell v. Underhill, 197 N.Y. 168, 90 N.E. 430, 27 L.R.A.,N.S., 233, 134 Am.St. Rep. 863, 18 Ann.Cas. 795; Ashford v. Reese, 132 Wash. 649, 233 P. 29, at page 31. Our statutes require the adoption of the common law as the rule of decision of the courts of this state, in so far as it is consistent with and adapted to the natural and physical conditions of this state and the necessities of the people thereof, and not repugnant to, or inconsistent with the Constitution of the United States, or the constitution and laws of this state, or established customs of the people of this state. Sec. 1-106, A.C.A. 1939. As a corollary of that premise it follows that the common-law rule, until changed by statute, is the rule this court must follow.

For the reasons stated the judgment of the lower court is in all respects affirmed.

STANFORD, C. J., and MORGAN, J., concurring.