509 P.2d 201

**Cheryl ADAMS, By and Through her Guardian ad litem, Norman Adams, Appellant,**

v.

**Matt DION, By and Through his Guardian ad litem, and William Dion, Appellees.**

No. 11166-PR.

Supreme Court of Arizona,
In Banc.
April 26, 1973.

O'Dowd, Fahringer & Diamos, by Erik M. O'Dowd, Tucson, for appellant.

Estes & Zlaket, by Thomas A. Zlaket, Tucson, for appellees.

LOCKWOOD, Justice:

This case is before us on a petition for review of a decision of the Court of Appeals (19 Ariz.App. 69, 504 P.2d 1292 (1973)) which reversed and remanded a summary judgment rendered by the superior court in favor of the defendants. The opinion of the Court of Appeals is vacated, the judgment of the superior court is reversed, and the case is remanded for trial.

This lawsuit is for personal injuries arising out of an automobile accident. Plaintiff, Cheryl Adams, was a passenger in a car crossing Fifth Street in Tuscon at a time when Kris Burwell and the defendant Matt Dion were alleged to have been drag-racing on Fifth Street. Burwell's car struck the car in which plaintiff was riding; it is not known whether the Dion car also struck plaintiff's car, but the pleaded fact that the two cars were racing makes their drivers joint tortfeasors for the purpose of ruling on a motion for summary judgment. All of the parties are minors, and they were represented by guardians ad litem. Defendant's father was joined under the family purpose doctrine. Five years after the accident, plaintiff is still permanently and totally disabled, and a helpless invalid.

Long before the commencement of this action, plaintiff's guardian procured permission from the court to settle plaintiff's claim against Burwell for fifty thousand dollars, and did so, releasing Burwell and

his father. When this action was brought against the Dions the defense was that the release of one joint tortfeasor releases all. The trial court granted summary judgment to defendants on that ground. Plaintiff asks that we repudiate that doctrine. The arguments in favor of doing so are unusually powerful.

Dean Wigmore, one of the greatest legal scholars that this country has produced, had nothing but contempt for the rule. He wrote a series of short notes for the Illinois Law Review entitled "Diversities De La Ley", one of which was devoted to criticism of the rule that release of one joint tortfeasor releases all. The note appears in 17 Ill.L.Rev. 563 (1923). We quote portions of it, omitting the citations:

"Our obnoxious old friend, that constant companion of personal injury cases, viz., the rule that a release to one of several joint-tortfeasors is a discharge to all, is receiving numerous hard knocks lately. He is already aged and infirm, being quite anachronistic; and it looks as though he would soon have to retire from active meddling in the affairs of men. The legislatures have begun to deliver blows at him * * * and these legislative remedial statutes sometimes become fashionable and spread rapidly.

*   *   *   *   *   *

"Considering that personal injury cases have occupied our courts in large degree for sixty years past, and that in that field his offensiveness was most obvious and constant. It is singular that so long a time has elapsed before the movement to blackball this obnoxious old party has developed. Various technicalities have been covertly employed to show our unfriendly sentiments towards him; e.g., the distinction between an out-and-out release and a covenant not to sue * * *.

"In recent years a few courts have further helped by at least giving to well-informed counsel the opportunity to evade the old gentleman, i.e., they refuse to recognize his authority where the re-

lease explicitly reserves all right to pursue other tortfeasors * * *.

*   *   *   *   *   *

"* * * Nothing but false logic prevents a complete repudiation of this principle. Some courts have indeed not deemed it necessary to wait for the legislature, and have repudiated the hoary fallacy on common law grounds * * *." *Id.* at 563–64.

In Case Note, 12 Vand.L.Rev. 1415, 1417 (1959) it is stated that the rule "has been almost universally condemned by the text writers", citing 1 Harper and James, Torts, 711–12 (1956); Prosser, Torts, § 46 (2d ed. 1955); Williams, Joint Torts and Contributory Negligence § 11 (1951). These authorities bear out the law review's statement.

In the original Restatement of Torts § 885 (1939) the American Law Institute adopted the common law rule, but in the latest rough draft, Restatement (Second) of Torts (Tent. Draft No. 16, 1970), it provides instead, that:

"A valid release of one tortfeasor * * * does not discharge others liable for the same harm, unless it is agreed that it shall do so." § 885

■ This, according to the text that follows, means that it does not discharge other joint tortfeasors unless such was the intent of the parties, or unless the amount paid for the release was full compensation. These are questions of fact which may be proved by parol evidence (since the opposing party was not a party to the release). See Collins v. Collins, 46 Ariz. 485, 52 P.2d 1169 (1935).

Some states, for some time, had a rule that there had to be a reservation of rights against others, in the release itself, but as the Restatement says, this turned out to be a trap for the unwary who did not seek legal advice, and such a condition should not be a requirement.

■ Since any amount received for the release of one joint tortfeasor must be credited on any judgment received against the other, there can be no double recovery.

■ To continue following the old common law rule gives rise to unintended results and stifles the desire of the victim to compromise, lest he lose the chance to get a larger amount from the other wrongdoer. As a result, in most jurisdictions, the rule has been abolished either by legislation or by judicial repeal. It has long been abolished, in effect, by knowledgeable lawyers who use the covenant not to sue instead of a release. This Court has always looked to the substance rather than to the form. Quintana v. Myers, 108 Ariz. 95, 492 P.2d 1202 (1972); Goodman v. State, 96 Ariz. 139, 393 P.2d 148 (1964).

Among the authorities which have broken with the past is the United States Supreme Court. See e.g. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 343–345, 91 S.Ct. 795, 808–809, 28 L.Ed.2d 77, 95–96 (1971). Thirty-seven states, follow the view of the proposed Restatement (Second) of Torts, *supra*: that the release of one joint tortfeasor is not a release of any other joint tortfeasors unless the document is intended to release the other tortfeasors, or the payment is full compensation, or the release expressly so provides. Twenty-one of the thirty-seven states effected the changes by statute. Zenith Radio Corp. v. Hazeltine Research, Inc., *supra*, 401 U.S. at 344, 91 S.Ct. at 809, 28 L. Ed.2d at 95. The other sixteen states have adopted the modern rule by judicial decision. See e.g. Breen v. Peck, 28 N.J. 351, 146 A.2d 665 (1958). See also Annot., 73 A.L.R.2d 403 (1960) and (Supp.1972).

In Arizona the rule has never been adjudicated, although in three cases it has been assumed that the common law rule prevailed: Smith v. Pinner, 68 Ariz. 115, 201 P.2d 741 (1948); Fagerberg v. Phoenix Flour Mills Co., 50 Ariz. 227, 71 P.2d 1022 (1937); Reese v. Cradit, 12 Ariz.App. 233, 469 P.2d 467 (1970).

The somewhat specious argument against our repeal of the rule is referred to by defendant's attorney who cites Ross v. Bumstead, 65 Ariz. 61, 173 P.2d 765 (1946) for the proposition that this is a common law rule which Arizona adopted by A.R.S. § 1–201 and

"As a corollary of that premise it follows that the common-law rule, until changed by statute, is the rule this court must follow." 65 Ariz. at 64, 173 P.2d at 768.

This "corollary", however, has been breached before. For example, the doctrine of parental immunity came to us from the common law. We did not, however, wait for the legislature to abrogate it when we felt that it had outlived its usefulness, and in Streenz v. Streenz, 106 Ariz. 86, 471 P.2d 282 (1970) we altered it.

■ We believe that the rule, as stated in the new draft of the Restatement (Second) of Torts, *supra*, is salutary and forward-looking, and we adopt it.

The opinion of the Court of Appeals is vacated. The judgment of the superior court is reversed and the case is remanded for trial in a manner consistent with this opinion.

HAYS, C. J., CAMERON, V. C. J., and STRUCKMEYER and HOLOHAN, JJ., concur.