BYRON L. WESTFALL, Plaintiff and Respondent, v.
MOTORS INSURANCE CORPORATION, a Corporation,
Defendant and Appellant.

No. 10355.

Submitted April 3, 1962. Decided August 3, 1962.
Rehearing Denied August 31, 1962.

374 P.2d 96.

See also 136 Mont. 449, 348 P.2d 784.

Landoe & Gary, Joseph B. Gary (argued orally), Bozeman, for appellant.

Morrow & Nash, Donald A. Nash, (argued orally), Bozeman, for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

Appeal from a judgment of the district court of Gallatin County in favor of the plaintiff and from an order denying a new trial.

The cause was tried before a jury and from the record it appears that on February 13, 1957, plaintiff, Byron L. Westfall, purchased a 1952 used Hillman automobile from Robert F. Dye, Inc., a retail automobile dealer doing business in Bozeman, Montana for $495. As a down payment, plaintiff was allowed a total of $200 for a 1937 Ford truck and a 1949 Ford automobile. The balance of $295 was financed by a conditional sales contract which the dealer, Robert F. Dye, Inc., assigned to General Motors Acceptance Corporation. As a part of the same transaction, Robert F. Dye, Inc., purchased a dual interest accident insurance policy from the defendant, Motors Insurance Corporation.

Especially relevant to this action is the fact that by the terms of the aforementioned insurance policy, the insured, i. e., the plaintiff and General Motors Acceptance Corporation as their interests may appear, would receive, in the event of collision or upset, the *actual* cash value of the insured vehicle at the time of the loss, less $50.

On February 23, 1957, ten days after the purchase, the plaintiff was involved in an accident, which rendered the Hillman automobile a total loss. At the time of the accident $330 was owing to General Motors Acceptance Corporation, the assignee of the conditional sales contract.

On February 28, 1957, the plaintiff related the facts surrounding the accident to W. A. Wood, an adjuster for the defendant insurance company. Based on his investigation of the accident, Wood submitted a report to the defendant company, in which report he ascertained the total loss to the insured to be $330, which amount purportedly represents the *actual* cash value (designated to be $380) of the insured vehicle at the time of the loss, less $50.

The last page of the aforementioned report contains a Loss or Damage Agreement and a Bill of Sale. Included in the Loss or Damage Agreement is a provision whereby the undersigned plaintiff in consideration of the payment of $330 by the defendant corporation agrees to *release* and discharge the defendant insurance company from further liability. The Loss or Damage Agreement with the release included therein and the Bill of Sale transferring title of the car to the defendant insurance company were signed by the plaintiff on February 28, 1957. The record indicates that the plaintiff had read and was familiar with the aforementioned agreements before he executed them. However, the plaintiff testified that, at the time he signed these instruments, defendant's adjuster Wood represented to him that the latter "would either get something out of it [plaintiff's interest in the insurance policy] or have a car," and, relying on these representations, plaintiff executed the Loss or Damage Agreement and the Bill of Sale.

Subsequently, defendant insurance company paid to General Motors Acceptance Corporation $330, the balance owing on the conditional sales contract. Plaintiff received a check for $9.81, which sum represented the unearned portion of the insurance premium.

Contending that he did not receive the ''something'' promised to him at the time he executed the Loss or Damage Agreement with the release contained therein and the Bill of Sale, plaintiff brought this action for compensatory and punitive damages.

Plaintiff asserts that on February 28, 1957, defendant's adjuster Wood fraudulently represented the actual value of the demolished Hillman at the time of the loss to be $380, when he knew the true actual value to be $495; plaintiff further asserts the defendant's adjuster Wood fraudulently represented to him that there would be ''something'' left over for plaintiff, Wood knowing this to be untrue. For his cause of action plaintiff alleges that, in reliance upon these fraudulent representations, he executed the Loss or Damage Agreement with the release included therein and the Bill of Sale, thereby suffering the damage for which he now prosecutes this action.

Defendant contended this was an action upon a voidable release and at the trial offered instructions to that effect; however, the district court refused to instruct on the question of release and proceeded on a tort theory based on fraud. The cause was submitted to the jury and their verdict was in favor of plaintiff, in the sum of $115 actual damages, plus $750 punitive damages. Defendant's motion for a new trial was denied.

Two issues must be considered herein: (1) whether the trial court erred in assuming this to be a tort action, and refusing to instruct the jury as regards the law of release; and, (2) whether the trial court erred in submitting the issue of punitive damages to the jury.

Necessary to a disposition of the first issue is an understanding of the law concerning the nature of a release. This court has held a release to be an affirmative defense which must be specially pleaded. Collier v. Field, 2 Mont. 320, 324, (1875); Betor v. Chevalier, 121 Mont. 337, 344, 193 P.2d 374 (1948).

In the present case the defendant Motors Insurance Corporation has specially pleaded the release in its answer. Also, it must be conceded that the fact of release is established in this case by virtue of defendant's adjuster's report which contains a written Loss or Damage Agreement with a release, voluntarily signed by the plaintiff, included therein.

R.C.M.1947, § 58-509, provides: "An obligation is extinguished by a release therefrom given to the debtor by the creditor, upon a new consideration, or in writing, with or without new consideration."

From the language of the above-quoted statute, it is seen that a release is a type of contract. Applying contract law to determine the validity of a release, this court has noted that a release is the verisimilitude of a contract. Koerner v. Northern Pacific Ry., 56 Mont. 511, 519, 186 P. 337. Accordingly, we agree with the authorities who hold that a release is a contract, and, as such, is subject to rescission for the same reasons as other contracts, including fraud or mistake of fact. See Matthews v. Atchison, T. & S. F. Ry., 54 Cal.App.2d, 549, 129 P.2d 435, 441 (1942).

We have held that a release executed under fear of imprisonment is voidable, because such a contract wants the voluntary assent of the party to be bound by it. Williams v. Thomas, 58 Mont. 576, 194 P. 500 (1920). For the same reason, a release procured through fraud is voidable. Since there are facts in the record indicating possible fraud practiced on the plaintiff by defendant's adjuster Wood, which facts may be sufficient to render the release in question voidable, we must inquire into whether or not the district court was squarely faced with the issue of voidable release.

In his reply, plaintiff alleges that the release pleaded by defendant's answer was procured through fraud hence, an issue of fact concerning a voidable release was raised under the provisions of R.C.M.1947, § 93-4904. Whether or not there

is sufficient fraud to avoid the release is for the jury to determine under proper instruction.

We hold the district court was in error in refusing to instruct the jury on the law of release and the judgment must be reversed.

In Chicago, M., St. P., & P. R. Co. v. Busby, 41 F.2d 617, (9th C.C.A., 1930) the Court of Appeals, on a tort claim for personal injuries arising out of an accident occurring in Montana, held that a release may be avoided for mistake or fraud in an action at law. The Court did not have to inquire into whether or not the parties were entitled to have the equitable issue of voidability first determined, because the entire issue of nonexecution of the release, fraud, and mistake were submitted to the jury without objection.

Anticipating the desirability of having the issue of voidability of the release in the present case first determined, we see no reason why, under proper instruction, the jury cannot first decide the question of fraud in procurement of the release; then, if the jury finds the release to have been procured through fraud, they may decide whether or not the defendant has breached the insurance contract.

The district court instructed the jury that it could properly assess exemplary damages against the defendant for the sake of example, and by way of punishment, if the defendant has been guilty of fraud. R.C.M.1947, § 17-208, provides: "In any action for a breach of an obligation *not arising from contract,* where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant." (Emphasis added).

Having held the release in question to be a contract, we are inexorably led to the conclusion that the provisions of the above-quoted statute preclude the awarding of exemplary damages in the present case.

Plaintiff cites Hobbs v. Smith, 27 Okl. 830, 115 P. 347, 34

L.R.A., N.S., 697, where the Oklahoma Supreme Court in construing an exemplary damage statute identical to ours held punitive damages proper in an action arising out of a contract for the sale of hogs, where the defendant knowingly sold diseased hogs to the plaintiff in violation of a penal statute. While neither agreeing with nor condemning the holding of that case, we need only say that perhaps the compulsion to punish and make an example of the defendant is greater in the Hobbs case than it is in this case.

In any event, we think the following language of the California Supreme Court is applicable to the situation presented here. In speaking on the issue of exemplary damages, the California court said: "(A)n award [for punitive damages] may not be granted in an action based on a breach of contract even though the defendant's breach was wilful or fraudulent." Crogan v. Metz, 47 Cal.2d 398, 303 P.2d 1029, 1033. In the Crogan case, even though the complaint is phrased in language of fraud, the action is based on breach of contract for money had and received, and the injury is defendant's failure to perform the contract.

Likewise, if plaintiff Westfall suffered any injury in this case, it resulted from defendant's failure to perform the insurance contract by misrepresenting the amount of the actual value of the demolished Hillman at the time of the loss. "Actual value at the time of the loss" is a question of fact for the jury; misrepresentation of this fact in addition to other facts tending to show fraud by defendant's adjuster may be cumulatively sufficient to entitle the plaintiff to avoidance of the release and actual damage resulting therefrom, but in no event is the plaintiff entitled to punitive damages.

Reversed and remanded for proceedings not inconsistent with this opinion.

MR. JUSTICES DOYLE, CASTLES and JOHN C. HARRISON concur.

MR. JUSTICE ADAIR (dissenting) :

In my opinion the judgment of the district court and its order denying a new trial were correct, hence, I am unable to concur in the foregoing opinion of this court.