No. 14851

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

GLORIA KUSSLER et al.,

Plaintiffs and Appellants,

vs.

BURLINGTON NORTHERN, INC., a
corporation, and THE STATE OF
MONTANA,

Defendants and Respondents.

---

Appeal from: District Court of the Sixteenth Judicial District,
Honorable A. B. Martin, Judge presiding.

Counsel of Record:

For Appellants:

Allen Beck argued, Billings, Montana

For Respondents:

Kurt W. Kroschel argued, Billings, Montana
P. Keith Keller argued, Helena, Montana

---

Submitted: December 14, 1979

Decided: FEB 11 1980

Filed: FEB 11 1980

Thomas J. Kearney
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

The District Court granted the defendants' motion for summary judgment. From this judgment the plaintiff appeals.

The plaintiff's husband was killed on June 12, 1975, at a railroad crossing when the van in which he was riding as a passenger collided with a Burlington Northern coal train. The van was owned by William O. Penn, but was being driven by Jerry Dewey, with the permission of Penn.

On June 2, 1978, the plaintiff filed a wrongful death and survivorship action against the Burlington Northern and the State of Montana, alleging that the railroad crossing was extra-hazardous by reason of the negligence of said defendants.

Penn had insured the van with State Farm Insurance. The policy provided that if the insured vehicle was driven by a third party with the permission of Penn, the third party would also be insured, which in this case was Dewey.

State Farm settled the plaintiff's case against Penn for $25,000. In consideration thereof the plaintiff executed a document which was denominated a "General Release." The release, in pertinent part, states:

> "KNOW THAT I, GLORIA KUSSLER, being over the age of 21 years and residing at P. O. Box 1102, Westwood, California, idividually [sic] and as Administratrix of the Estate of Martin J. Kussler, Jr., as RELEASOR, in consideration of the sum of TWENTY FIVE THOUSAND ($25,000.00) DOLLARS received from WILLIAM PENN, as RELEASEE, receipt whereof is hereby acknowledged, releases and discharges WILLIAM PENN, the RELEASEE, RELEASEE'S heirs, executors, administrators, successors and assigns from all actions, causes of action, debts, dues, sums of money, accounts, reckoning, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, which against the RELEASEE, the RELEASOR, RELEASOR'S heirs, executors, administrators, successors and assigns hereafter can, shall or may, have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the date of this RELEASE."

At the time of making the claim against Penn, plaintiff was a resident of the State of New York and represented by a New York attorney. The release was signed by the plaintiff in California.

Based upon the general release and Montana law the District Court granted the defendant's motion for summary judgment.

This case presents the following two issues:

(1) Whether Montana law applies to the facts of this case.

(2) Whether the general release of one named joint tortfeasor releases other unnamed tortfeasors.

Section 28-3-102, MCA, states:

"A contract is to be interpreted according to the law and usage of the place where it is to be performed or, if it does not indicate a place of performance, according to the law and usage of the place where it is made."

This statute throws into question which law applies to a contract involving a Montana accident and a New York resident which was signed in California. However, when there is a release of a tortfeasor involved, the law is clear.

"It has been generally held that the law of the place of the wrong governs the question whether the release of one tortfeasor operates to release all joint tortfeasors. In a few cases the law of the place of contracting has been held controlling. But in all these cases it appears that the place of contracting was also the place of the wrong." 66 Am Jur 2d, Release, §45, p. 727.

The rationale for this rule of law was stated in Western Newspaper Union v. Woodward (W.D. Mo. 1955), 133 F.Supp. 17, at 23, as follows:

"The first question then is: What law governs, first, the tort, and, second the contract of release? Inasmuch as the claimed bar of this action rests entirely upon the release, it would not be necessary presently to determine what law governs the tort were it not for the fact that the cases hold that a contract of release, absent, as here, express designation of other laws to control it,

- 3 -

is presumed to have been made in contemplation of, and, hence, to be governed by, the laws of the state that created or gave rise to the right thereby released, but because of that fact it is necessary to determine what law governs the tort, and so doing will also determine the law that governs the contract of release."

Montana law created the right to sue for the tort committed. This right gave rise to the release which the plaintiff signed. There is no question that Montana courts have jurisdiction to try a case which involves the underlying tort. Consequently, it is only logical that Montana law applies to the release, where the release does not specify which law applies.

We now turn to the question of whether the summary judgment was properly granted. The law governing summary judgments is found in Rule 56, M.R.Civ.P. A motion for summary judgment is properly granted if:

" . . . the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In the present case the plaintiff is contending that the intent of the parties at the time the release was negotiated was an issue and that this intent is a material fact. The District Court's order states at pages 2 and 3:

"Granting that plaintiff did not intend to release the defendants, the law is clear that a general release in the absence of a covenant not to sue or a reservation of right to sue, releases all joint tortfeasors. Reading the release in the light of the law as declared in cited Supreme Court cases, there is no ambiguity in the release that would entitle plaintiff to present parole evidence to explain her intent."

As the following discussion will show, the only material fact was the existence of the release and the language it employed. There is no genuine issue presented by this document. The only question to be resolved is the application of Montana law to this document.

In the last 50 years there have been four Montana cases

- 4 -

which have dealt with similar fact situations. Black v. Martin (1930), 88 Mont. 256, 292 P. 577; Lisoski v. Anderson (1941), 112 Mont. 112, 112 P.2d 1055; Beedle v. Carolan (1944), 115 Mont. 587, 148 P.2d 559, and McCloskey v. Porter (1973), 161 Mont. 307, 506 P.2d 845.

In Black this Court held that a plaintiff may release a joint tortfeasor and still preserve a cause of action against another joint tortfeasor if there is language to this effect in the written release. In Lisoski, the Court held that a plaintiff may not sue a joint tortfeasor where a written release has been executed with another joint tortfeasor which specifically releases "all other persons, firms or corporations from all claims . . . ."

The Beedle case is factually similar to the present case. The plaintiff was put in jail by Sheriff Burns at the instance of defendant Carolan who was the county attorney. Plaintiff brought suit against Burns for false imprisonment. This suit was settled and a written release was signed by plaintiff. The release only mentioned Burns and a surety company as being the parties released. This Court found that the release, therefore, was a bar to the plaintiff's action and said:

> "The words . . . mean that plaintiff has been fully compensated for any injuries arising out of the transaction; having been fully compensated he has no further cause of action. Nothing in the release in any way hints at a reservation of the right to sue the county attorney or anyone else because of the false arrest and, as we have said, that reservation must appear on the face of the instrument." 115 Mont. at 590.

The rule was again stated in the McCloskey case, supra:

> "In Montana, the rule has long been established that the release of one joint tortfeasor releases the others, unless there are clear provisions in the release to the contrary." 161 Mont. at 311-12.

In the present case, the release has no provisions which reserved a right to sue any other party. Because the law in the

state is clear on this point, the District Court is affirmed.

This, however, does not end our discussions. We are compelled to make the following observations concerning this rule. The rule was adopted from the English common law and it has been criticized by many authorities. In Black v. Martin, supra, this Court quoted from Dean Wigmore that the rule was a "'surviving relic of the Cokian period of metaphysics.'" 88 Mont. at 269.

The theory underlying the rule has been stated:

>    " . . . the essential unity of the injury, and the
> fact that the injured party is entitled to but one
> compensation therefor, make it impossible for the
> injured person to settle with one tortfeasor with-
> out discharging the other." 66 Am Jur 2d, Release,
> §37, p. 716.

The case of Breen v. Peck (1958), 28 N.J. 351, 146 A.2d 665, contains a history of the rule. The first instance of the rule cited is Cocke v. Jennor, Hob 66, 80 Eng.Rep. 214 (K.B.1614), wherein a plaintiff had released one joint tortfeasor. The court held that the other tortfeasor could not then be sued because the release was a "satisfaction in law" despite the fact that there may have been no intention to absolve the other tortfeasor. In Duck v. Mayen (1892) 2Q.B.511(C.A.) the Cocke case was cited for the proposition that English law was well settled that the release of one joint tortfeasor releases the others. The reason given for the rule was " . . . that the cause of action, which is one and indivisible, having been released, all persons other- wise liable thereto are consequently released . . ."

The Breen case gave a summary of the criticisms of this rule. 146 A.2d at 668. As a consequence, the New Jersey Supreme Court changed the rule in New Jersey. They said that the court has the " . . . power to remould the English common-law rule . . ."

In Adams v. Dion (1973), 109 Ariz. 308, 509 P.2d 201, the plaintiff was injured in a car wreck which involved joint tort-

feasors. One of the tortfeasors was released. The other was the defendant in the case. The law in Arizona had been that a release of one released all. The court listed several reasons for overruling the common law rule. They said that the rule is a trap for the unwary, it stifles the desire of the victim to compromise, and it leads to results not intended by the parties. As a result, the court adopted the rule "that the release of one joint tortfeasor is not a release of any other joint tortfeasor unless the document is intended to release the other tortfeasors, or the payment is full compensation, or the release expressly so provides." 509 P.2d at 203.

This rule was adopted from the Restatement (Second) of Torts §885. The United States Supreme Court also adopted the rule in antitrust litigation in Zenith Radio Corp. v. Hazeltine Research (1971), 401 U.S. 321, 344, 28 L Ed 2d 77, 95, 91 S.Ct. 795, 809.

From the date of this decision the law of Montana on this subject will follow the position of the Restatement which is quoted in the Adams case, supra. Unless a release specifically states otherwise, a finder of fact may consider the intent of the parties in making a release. Whether the parties intended to release other parties or whether the release was full compensation may be shown by parol evidence because the opposing party was not a party to the release.

Upon sound authority we make the force of this ruling prospective only. In Montana Horse Products Co. v. Great Northern Ry. Co. (1932), 91 Mont. 194, 7 P.2d 919, this Court construed a statute dealing with the freight rates charged by the defendant. The rates being contested had been previously authorized by the Railroad Commission, but the Commission had later decided that the rates were excessive and ordered that the excessive amounts be returned to the shippers. This Court held that the rates had

- 7 -

been properly charged even if they were excessive and that the Commission's order should not have been made retroactive. However, in making the retroactive ruling the shippers and the Commission had relied on a former Montana case which had affirmed this procedure. (This former case was overruled by the Horse Products case.) This Court said:

> "It would be manifestly unjust and improper to deprive the shipper of its legal right to recover the excessive amount of tariff exacted by the railway company as pronounced by this Court simply because of the later opinion expressed by this court repudiating its former decision. (Citation omitted.) The decisions of this court are controlling until reversed or modified by this Court."
> 91 Mont. at 211.

In denial of a motion for a rehearing in the Horse Products case, this Court said:

> "The construction given to a statute, although erroneous, before its reversal or modification, becomes a part of it as much as though written into it; and the change made in construction will affect only contracts made thereafter."
> 91 Mont. at 215.

This logic applies with even more force to the instant case where we are changing the common law. It would be manifestly unfair to change a law which has been relied upon in this jurisdiction. Consequently, the new rule adopted will only apply to releases executed after the date of this decision. To all others, the old rule will apply.

The United States Supreme Court has expressly stated that a state may make the application of a new rule prospective only. In Great Northern Ry. v. Sunburst Co. (1932), 287 U.S. 358, 77 L.Ed 360, 53 S.Ct. 145, the Court considered a companion case of the Horse Products case. They said that a state court "may make a choice for itself between the principle of forward operation and that of relation backward" when a precedent is overruled. 287 U.S. at 364. They also said that "[t]he alternative is the same whether the subject of the new decision is common law (Citation omitted.) or statute." 287 U.S. at 365.

The District Court is affirmed.

_Frank J. Haswell_
Chief Justice

We concur:

_Gene B. Daly_

_John Conway Harrison_

Justices

Mr. Justice John C. Sheehy, deeming himself disqualified, did not participate in the decision or opinion in this case.

Mr. Justice Daniel J. Shea concurring in part and dissenting in part:

I would permit the plaintiff here to put on proof that she did not intend to release the Burlington Northern. The majority perceives the unjustness of the law that it is over-throwing prospectively today, but commits an unjust result in the process by not permitting the plaintiff to put on her own proof that Burlington Northern was not an intended beneficiary of her release. It is manifestly unjust not to give the plaintiff here the benefit of such ruling.

_Daniel J. Shea_
Justice