No. 80-330

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

JERRY L. KRUSEMARK, as the successor in
interest of PARKVIEW MEMORIAL GARDENS,

Plaintiff and Appellant,

vs.

MARLENE H. HANSEN, a/k/a MARLENE H. SPAIN,
ALAN R. CAPERS, PARK VIEW MEMORIAL GARDENS,
INC., et al.,

Defendants and Respondents.

Appeal from:   District Court of the Sixth Judicial District,
In and for the County of Park.
Honorable Diane G. Barz, Judge presiding.

Counsel of Record:

For Appellant:

McKinley Anderson, Bozeman, Montana

For Respondents:

Crowley, Haughey, Hanson, Toole & Dietrich,
Billings, Montana
Landoe, Brown, Planalp, Kommers & Lineberger,
Bozeman, Montana

Submitted on briefs: March 4, 1981

Decided: April 22, 1981

Filed:   APR 22 1981

Thomas J. Kearney
_____
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Plaintiff Jerry Krusemark, as successor in interest of two corporations which operated the Park View Memorial Gardens cemetery, appeals from a summary judgment of the Sixth Judicial District Court, Park County, granted to defendant First Security Bank of Livingston, Montana.

Plaintiff presents one issue for our review:

Did the District Court err in granting this motion for summary judgment? We hold that the District Court acted properly. We affirm the judgment of the District Court.

This appeal constitutes plaintiff's third request for this Court's review of orders granting summary judgment in favor of the defendant First Security Bank. In 1979, plaintiff attempted to appeal from the District Court's initial entry of summary judgment in favor of the Bank and we declined to entertain the appeal. Final judgment had not been entered by the District Court at that time, pursuant to Rule 54(b), M.R.Civ.P. See, Krusemark v. Hansen (1979), ___ Mont. ___, 597 P.2d 48, 36 St.Rep. 159. In 1980, after entry of final judgment, we reversed the District Court's summary judgment entered in favor of the Bank, holding that the entry of summary judgment failed to comply with Rule 56(c), M.R.Civ.P. See, Krusemark v. Hansen (1980), ___ Mont. ___, 606 P.2d 1082, 37 St.Rep. 304. We then remanded the case to the District Court for further proceedings.

After the case was remanded to the District Court, the Bank renewed its motion for summary judgment. Following hearing on this motion and review of the parties' arguments, the District Court again ordered the entry of summary judgment in favor of the Bank. Following Rule 54(b), M.R.Civ.P., the

-2-

court directed the entry of final judgment in favor of the Bank, dismissing it as a party defendant. This appeal followed.

This lawsuit springs from the financial difficulties of a Livingston cemetery business, the Park View Memorial Gardens. In 1962, Kenneth and Marlene Hansen formed Park View Memorial Gardens, Inc. to own and operate a cemetery and to sell cemetery plots, interment vaults and grave markers on contract. These sales contracts provided that the company would deposit 15 percent of the purchase price of the plot or vault into a trust entitled "Perpetual Care and Maintenance Trust." The contracts further provided that an additional, unspecified portion of the purchase price would be held in a separate fund to insure performance under the contracts. Plaintiff's complaint seeks to recover these trust monies alleged to have been wrongfully taken by defendants. Plaintiff is the present owner of the cemetery business. According to plaintiff's complaint, defendants are the former owners of the business.

In 1969, the Hansen's company transferred its interest in the cemetery business to Alan Capers. Capers paid $65,000 for the assets, by giving the company $1,000 downpayment and $64,000 in promissory notes. The notes were secured by a mortgage on the cemetery. At the time of sale, there was a deficiency in the trust funds to be transferred to Capers. The sales agreement between the corporation and Capers stated, however, that the corporation had no obligation to bring "the trust funds current." At the time of sale to Capers, $5,500 of the perpetual care fund was held in an irrevocable trust with the Union Bank of Helena acting as trustee. Additionally, the company held approximately 15 certificates of deposit worth

$22,000 purchased from First Security Bank.

Capers formed a new corporation to run the cemetery. In January 1971, this company, in need of money, borrowed $20,000 from the First Security Bank and pledged some savings certificates as collateral. These savings certificates were replacement certificates for the certificates of deposit acquired in the sale of the cemetery. On June 1, 1971, the Capers Company consolidated a number of debts owed to the First Security Bank, and executed a promissory note secured by a second mortgage on the cemetery property. In April 1972, Marlene Hansen, as successor in interest to her cemetery corporation, transferred to the Bank the first mortgage on the business given by Capers in connection with his 1969 purchase, in exchange for $25,000.

The Capers cemetery operation, gravely indebted, failed. Capers left Livingston and abandoned his business. At this time, Krusemark became interested in purchasing the cemetery. Krusemark conducted a fairly extensive examination of the business' financial background and the sale contracts made with plot purchasers. Krusemark discussed his interest in the cemetery purchase with the First Security Bank president, Claude Erickson. Krusemark indicated that he wanted to purchase the cemetery for $50,000 if the business debts could be eliminated via a foreclosure sale. The Bank informed Krusemark that it would be willing to lend him the money to purchase the cemetery property. The Bank also informed him that it would satisfy the amount owing on the Capers promissory note by claiming the proceeds of the savings certificates.

On May 25, 1972, the Capers cemetery business went through foreclosure sale and was purchased by Krusemark for $50,000. Krusemark borrowed $55,000 from the First Security Bank to make this purchase. On May 31, 1972, the Bank

-4-

applied the proceeds of the Capers company savings certificates to the payment of the promissory note for which the certificates had been pledged as security. Krusemark knew of the Bank's activity with regard to the certificates and threatened the Bank with a lawsuit. This lawsuit was settled before any complaint was filed. In exchange for a $10,000 reduction on his $55,000 loan with the Bank, Krusemark agreed to release the Bank from any legal liability with regard to the certificates. This release was entered into in 1974. Three years later, plaintiff brought this suit against Hansen, Capers, their cemetery businesses and the Bank. In its answer to this complaint, the Bank affirmatively pleaded the defenses of release and statute of limitations.

We hold that the release entered into between Krusemark and the Bank bars this action against the Bank, and that summary judgment was properly granted pursuant to Rule 56, M.R.Civ.P. The release agreed to by both parties extinguished any claim brought by Krusemark, involving the perpetual care maintenance and performance funds. See, section 28-1-1601, MCA. The release provided as follows:

"RECITALS:

"1. The undersigned Jerry L. Krusemark alleges that he has claims, either in his own right or as a representative of others, to recover the value of savings certificates pledged to the First Security Bank of Livingston, Montana, by Park View Memorial Gardens, Inc., or Paradise Valley Memorial Gardens, Inc., or other corporations of similar name.

"2. The undersigned Jerry L. Krusemark contends that said certificates so pledged as aforesaid were in fact subject to a trust and that the trustee who made the deposit had no right to pledge or hypothecate the savings certificates which were foreclosed upon by said bank.

"3. The said First Security Bank of Livingston, Montana, has denied the existence of any trust and has denied knowledge, actual or constructive, of any trust affecting such certificates or the

limitation on the right of the borrower to pledge
or hypothecate said certificates.

"4.  In order that certain other transactions
hereinafter referred to might be consummated
the undersigned Jerry L. Krusemark desires and
intends to release said bank of and from all
claims, demands, and charges of every kind and
character arising out of the claims and con-
tentions above noted and also arising out of
any other claims or contentions of the said Jerry
L. Krusemark, individually or in any representa-
tive capacity, as a result of any transactions
with said bank of any kind or character or at any
time.

"RELEASE:

"NOW, THEREFORE, for the consideration hereinafter
expressed, the undersigned Jerry L. Krusemark,
for himself and for any other party whom he
represents, to the extent authorized by law, does
hereby forever acquit, release and discharge
First Security Bank of Livingston, its successors
and assigns, of and from all claims and actions
of every kind and character, whether arising out
of the circumstances above mentioned, or any other
transactions or circumstances of any kind or
character without limit, and

"FURTHER, the undersigned Jerry L. Krusemark does
hereby covenant that he will not encourage, foster
or support, except to the extent that he may be
required to do so by legal process for which he
is in no way responsible, directly or indirectly,
any claim or action against First Security Bank
of Livingston relating to or arising out of any
act or transaction occurring prior to the date
hereof.

"This release constitutes the settlement of dis-
puted claims and shall not be taken as an
admission of liability by either party."

In his argument to this Court, Krusemark attempts to

bypass the bar of the release by contending that he is not

personally bringing this action; but is acting as the repre-

sentative of others--the cemetery plot and vault purchasers.

We do not accept this contention.  The release expressly

states that Krusemark agreed to "acquit, release and discharge"

the Bank from all claims "for himself and for any other

person whom he represents."  The release bars any lawsuit

brought by Krusemark in any capacity with regard to the

cemetery trust funds.

-6-

The extensive discovery conducted in this case clearly shows that the release was not obtained improperly. The deposition taken by the Bank's attorneys from Krusemark indicates that he freely entered into the release agreement. Krusemark failed in his burden of proving that the release was not to bar his claim. No evidence exists in the record to show that the release was entered into fraudulently or without adequate consideration. See, Williams v. Thomas (1920), 58 Mont. 576, 194 P. 500.

Summary judgment was properly granted in this case in favor of the Bank. No genuine issues of fact regarding the release were left to be resolved by a trier of fact and the Bank, the moving party, is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. We affirm the judgment of the District Court.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-7-