No. 87-360

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

_____

ETHEL HANSON,

             Plaintiff and Appellant,

   -vs-

MARY OLJAR and STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY,

             Defendants and Respondents.

_____

APPEAL FROM:   District Court of the Eighteenth Judicial District,
                In and for the County of Gallatin,
                The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Allen L. McAlear, Bozeman, Montana

     For Respondent:

          Moore, Rice, O'Connell & Refling; Christopher L.
          Manos, Bozeman, Montana

_____

Submitted on Briefs:  Feb. 11, 1988

Decided:    March 25, 1988

Filed:

_____
              Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Ethel Hanson appeals an Eighteenth Judicial District Court judgment in favor of Mary Oljar and State Farm Mutual Automobile Insurance Company. The District Court found that Ethel Hanson had executed a valid release of all claims relating to an automobile accident and that she was bound by the settlement terms. We affirm.

Ethel Hanson (Hanson) and Mary Oljar (Oljar) were involved in an automobile accident in Bozeman, Montana, on May 8, 1985. Oljar's vehicle struck Hanson's vehicle while Hanson was stopped at an intersection. Both parties were insured by State Farm Mutual Automobile Insurance Company (State Farm). An adjuster for State Farm, Richard Brown (Brown), investigated the accident and determined that Oljar was at fault. Brown also obtained a medical report from Hanson's doctor which listed Hanson's permanent disabilities from the accident as "undetermined at this time." Brown did not discuss the medical report with Hanson.

After several negotiations with Hanson, State Farm, through its adjuster, paid Hanson $4,362.85 for medical expenses, lost wages, car rental costs, headaches, and inconvenience. In return for the settlement payments, State Farm obtained a general liability release from Ethel Hanson and her husband, Ben Hanson, on July 9, 1985. On July 15, 1985, Hanson sent a thank you note to Brown to express that she was pleased with Brown's "settlement and prompt service . . . "

Unknown to State Farm at the time of settlement, Hanson had retained a Bozeman attorney on May 31, 1985, to represent her with regard to two automobile accidents -- the May 1985

2

accident and an earlier accident in February of 1985. Hanson did not tell the State Farm adjuster about her attorney nor did the attorney contact State Farm about the representation.

On July 18, 1985, Hanson visited her doctor and received a copy of the same medical report sent to Brown. Hanson took the medical report to her attorney and informed him that she had received a settlement and had signed a release. That same day, Hanson's attorney deposited $1,010.40 in a Bozeman bank payable to State Farm and sent State Farm a document entitled "Tender of Payment and Recision of Release." State Farm refused to accept the tender of payment. On April 14, 1986, Hanson filed this lawsuit for recision of the release and damages.

The District Court held a non-jury trial on April 17, 1987. Thereafter, the District Court made the following findings of fact:

> 1. Richard Brown, an adjuster with defendant State Farm, investigated plaintiff's claim of July 19, 1985.
>
> 2. Both Mrs. Hanson and Mrs. Oljar were insured by defendant company. Brown's investigation revealed that Mrs. Oljar was at fault in the automobile collision.
>
> 3. Mr. Brown was informed of medical bills, lost income and property damage incurred by plaintiff.
>
> 4. Brown talked with plaintiff about medical payments and lost income. He authorized an advance payment of $678.23 on June 13, 1985. Brown paid advances on wages and medical bills when presented by plaintiff. No other bills were presented.
>
> 5. Brown and plaintiff talked about four or five times about the matter.

3

6. On July 9, 1985, Brown secured from plaintiff and her husband a release of all claims for the payment of $4,362.85. The document was signed at the Hanson residence. Brown issued drafts for car repair, car rental and a draft to plaintiff for $1,010.40.

7. Brown had seen a medical report on plaintiff's condition prior to obtaining the release on July 9, 1985.

8. At this meeting, Brown agreed to pay for plaintiff's car rental expenses and property damage. There were no outstanding medical bills.

9. Brown did not show the medical report to the plaintiff and does not know if he discussed it with her.

10. The parties discussed plaintiff's headaches and inconvenience. Brown offered $700; plaintiff's counteroffer was $1000. Brown claimed that the release was "final and complete" except for additional medical expenses up to $3000 for 180 days from the date of the agreement.

11. Brown gave no itemization as to which policy was being assessed for plaintiff's damages, but Brown authorized all payments to be made under the Oljar policy.

12. Ben Hanson, plaintiff's husband, testified that on July 9, 1985, he paid no attention to the conversation between plaintiff and Mr. Brown. He did hear "inconvenience" due to problems renting a car. Mr. Hanson suggested $1000 and Brown agreed. Mr. Hanson does not remember any reference to medical problems. Mr. Hanson did not realize that the release was "final" and claims Brown misrepresented that it was not final.

4

13. Mr. Hanson claims that he has to do most of the driving, and his wife is afraid of another collision.

14. Mr. Hanson admitted that Brown said other medical bills could be paid under the release.

15. Plaintiff testified that she had two accidents in 1985. The accident in question was the second accident.

16. Plaintiff retained Mr. McAlear for personal injuries only on May 18, 1985.

17. Mr. McAlear also represented plaintiff on the first accident and recovered a settlement for personal injuries. Plaintiff settled her own property damage claim.

18. Plaintiff had not seen any report from Dr. Heetderks, her family physician.

19. Plaintiff denies that the release was final. For example, she remembers her husband told Brown that the future was uncertain about plaintiff's injuries.

20. Plaintiff received the Heetderks report on July 18, 1985, and immediately took it to Mr. McAlear.

21. Mr. McAlear thereafter tendered back the sum of $1010.40 and deposited the same in an interest-bearing account at First Security Bank.

22. Plaintiff claims that she suffered headaches which kept her awake at night. She has a fear of having another accident.

23. Plaintiff admits that she told no one that Mr. McAlear had been retained by her concerning the Oljar accident.

5

24. Plaintiff admits to having received different drafts from Brown.

25. Plaintiff has not seen a physician for her headaches after signing the release form.

26. Except for the two 1985 accidents, plaintiff has had no dealings with the insurance adjuster.

27. After the release was signed, plaintiff wrote a "thank you note" to Mr. Brown.

28. Brown had no communication with anyone but plaintiff until the July meeting.

29. Plaintiff did not express any confusion about the form.

From these findings of fact, the District Court made the following conclusions of law:

1. The release form is clear and unambiguous. The parties engaged in negotiations as to the final sum. Plaintiff is bound by the terms of the settlement. Defendant's adjuster was not guilty of any impropriety. Plaintiff shall take nothing by her complaint.

2. Defendant is awarded costs.

Hanson raises the following issues on appeal:

(1) Has Montana adopted the modern liberal rule on construction of releases on a single party personal injury case?

(2) What factors should a court consider in determining whether or not a release should be set aside?

From Hanson's briefs, we identify the following issue on appeal: Can Ethel Hanson's alleged intent that the release not be a full and final settlement serve to nullify

the release?   The District Court's findings of fact are undisputed on this appeal.   We must determine from the record of this case whether there is substantial credible evidence to support the District Court's findings and conclusions.   In re the matter of B.T. (Mont. 1986), 725 P.2d 230, 232, 43 St.Rep. 1728, 1730.   The District Court will not be reversed unless the findings are clearly erroneous and represent an abuse of discretion.   Rule 52(a), M.R.Civ.P.;   Walker v. Larson (Mont. 1986), 727 P.2d 1321, 1322-23, 43 St.Rep. 1765, 1767.

Hanson urges this Court to adopt a "liberal rule of construction" regarding releases.   She derives this "liberal rule" from strained interpretations of several cases regarding releases to argue that her intent was not to make a final settlement.   Hanson requests that we examine her intent to conclude that the release should be rescinded.

It is clear from previous decisions of this Court that we must apply the law of contracts to determine the validity of a release such as presented in this case.   Westfall v. Motors Insurance Co. (1962), 140 Mont. 564, 568, 374 P.2d 96, 98-99.   "[A] release . . . is subject to recession for the same reasons as other contracts."   Westfall, 374 P.2d at 98-99.   Accordingly, a release obtained through fraud, mutual mistake, or with inadequate consideration may be rescinded under proper circumstances.   Krusemark v. Hansen (Mont. 1981), 627 P.2d 1202, 1205, 38 St.Rep. 594, 598; Westfall, 374 P.2d at 99.   No evidence exists in the record of this case to show that the release was entered into fraudulently, through mutual mistake, or without adequate consideration. Hanson declines to argue the available contract theories for rescinding the release saying only that such theories are

7

reversions to outdated principles of law that do not apply to this case.

Hanson's authority regarding the so-called "liberal rule" of interpreting releases does not support her position. These cases stand for the general proposition that the intent of releasor at the time of the release may be considered as a factor to determine whether a release by an injured party of one tort-feasor thereby releases all concurrent tort-feasors. See e.g., Kussler v. Burlington Northern, Inc. (1980), 186 Mont. 82, 88, 606 P.2d 520, 522-23; McCloskey v. Porter (1973), 161 Mont. 307, 315, 506 P.2d 845, 849. This Court is not presented with an issue in this case to which the above-stated rule might apply.

Hanson's intent, unknown to Oljar, Brown, or State Farm, cannot change the obvious intent of the release in this case. Richardson v. Safeco Ins. Co. of America (Mont. 1983), 669 P.2d 1073, 1075, 40 St.Rep. 1515, 1517. Although the record indicates that Hanson may have some problems or injuries related to the automobile accident for which she might not have been compensated, her "latent discontent with the release cannot be grounds for alteration of [an] express" agreement to settle with State Farm. McCloskey, 506 P.2d at 849-50.

There is substantial credible evidence in the record to support the District Court's findings and conclusions. Hanson negotiated with State Farm over the terms of the settlement and signed an "Agreement and Release" discharging Oljar and State Farm "from all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever . . . [for] all injuries, known and unknown . . . ." The District Court correctly concluded that the

8

terms of the agreement and release were clear and unambiguous and that Hanson was bound by those terms.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Mr. Justice John C. Sheehy, dissenting:


I dissent from the foregoing Opinion, which is a decidedly minority view of the courts which have passed upon the question here presented.

Just as important, we should take this opportunity to stop what is apparently a dastardly practice by State Farm, that is, procuring from its Montana insureds releases which purport to be final in form, but which allow for medical bills incurred for the next six months, not exceeding $3,000 in total, but deny the insureds any further right to recover either for pain or suffering or permanent harm as shown by the future bills.

Most pointedly, State Farm acquired this release without discussion given to its insured to explain the meaning of the release either to the unknown injuries, or to the application of the future medical benefits.

Finally, the majority has overlooked or chosen not to discuss the ramifications of the adjuster here obtaining a doctor's report concerning the insured from her doctor, and never disclosing to the insured what that doctor's report contained prior to obtaining her signature on the release.

When an insurer presents a release to an injured party, the insurer has a duty, if the release contains a reference to unknown injuries, to explain particularly the significance of that clause to the proposed releasee:

> Where a release is given with reference only to
> known injuries, and it subsequently develops that a
> substantial injury then existed which was unknown
> to the parties and not taken into consideration,
> the release may be avoided on the grounds of a
> mutual mistake. This is true even though the
> instrument contains a clause, not the subject of
> express bargaining, that the release shall apply to
> all unknown and unanticipated injuries. Where an

> injured person, not knowing that the accident had caused a certain injury, signed a release tendered by the insurer of the person causing the injury, and unknown to the releasor the release contained a clause which related to unknown injuries and to conditions which might thereafter develop, the release was not binding as to the unknown injuries. If the person who induced the releasor to sign the release did not know of the clause relating to unknown injuries, the case presented a mutual mistake of fact. And if the person who tendered the release for signing knew of the clause and knew that the releasor was not aware of the clause, he had a duty to inform the releasor of the existence of the clause.

66 Am.Jur.2d 694, 694, 695, Release, § 20.

In Kussler v. Burlington Northern, Inc. (1980), 186 Mont. 82, 606 P.2d 520 and McCloskey v. Porter (1973), 161 Mont. 307, 506 P.2d 845, we were governed by the intent of the parties as to the release in reaching our decisions. In every case where a release is obtained by an insurer which contains reference to unknown injuries, intent is an issue, and one about which the court must specifically make a finding. Although a releasee may, if he intends to do so, release any rights respecting future injuries, he should not be bound by any release which signs away those future rights without any discussion or without the intent of the releasee. That is the majority view:

> As previously noted, there are essentially two lines of authority which have developed around similar cases in other jurisdictions. The line followed in a small minority of jurisdictions is typified by the Oregon case of Wheeler v. White Rock Bottling Company, 229 Or. 360, 366 P.2d 527 (1961). In Wheeler, the court adhered to traditional conceptions regarding contract law, and held a release binding upon a pregnant woman with subsequently discovered back injuries. While this case is not directly in point as the plaintiff in that case was aware of some back pain which her physician may have thought pregnancy originated, it

- 11 -

does illuminate the inflexible and dogmatic approach of some courts. In their considerations of the validity of general liability waivers, these jurisdictions appear not to differentiate between standards applicable to commercial transactions and those peculiar to personal injuries. See generally, Annot. § 15, 71 A.L.R.2d 82, 167-69 (1960).

The better reasoned rule adopted by an overwhelming majority of jurisdictions permits the avoidance of a release in circumstances where later discovered injuries were clearly not contemplated by the parties at the time of release. A reasonably succinct statement of this line of authority is set forth by the California Supreme Court in Casey v. Proctor, 59 Cal.2d 97, 112-113, 28 Cal.Rptr. 307, 378 P.2d 579 (1963):

"Under the majority rule, however, a release may not ipso facto be avoided upon the ground of later discovered injuries. The essence of the rule is that the wording of the release is not conclusive; it is a question of fact whether the parties to a release actually intended to discharge such liability . . ."

Finch v. Carlton (Wash. 1974), 524 P.2d 898, 900.

We should look to our sister state of Idaho, which in Ranta v. Rake (Idaho 1967), 421 P.2d 747, pointed out that the liberal policy of avoiding releases where there are unknown injuries is guided by the following factors:

(a) the peculiar dignity the law accords the human person as distinguished from articles of commerce; (b) the very real possibility of being mistaken about the long range effects of damage to human tissue; (c) the inequality of the bargaining positions of the contracting parties; and, (d) the amount of consideration received compared to the risk of the existence of unknown injuries.

421 P.2d at 751.

In addition to the foregoing factors, the State of Washington added the haste, or lack thereof, with which the release was obtained. Finch, 524 P.2d at 901.

- 12 -

Moreover, we should direct our attention to the kind of release that was taken by State Farm in this case. This was a case where State Farm represented as an insurer both the responsible party, Mary Oljar, and the injured party, Ethel Hanson. Each were operating automobiles which were insured at the time by State Farm Mutual Automobile Insurance. A special duty in that situation devolved upon State Farm to be fair and equitable in its handling of the claims as between its two insureds. It is not disclosed in the record whether the car driven by Ethel Hanson in this case provided coverage, separate from the other coverages, for medical payments to those persons injured in the operation of the Hanson automobile. If it did, the form of release taken by State Farm was even more reprehensible. A copy of the release taken from Ethel Hanson is shown in the exhibit 1 attached to this Dissent. It will be seen that in addition to the monies paid by State Farm under the term of the release, there was in addition a printed schedule of benefits in which State Farm agreed to pay an amount not to exceed $3,000 for medical, dental or surgical treatment furnished to the releasee within six months following the date of the agreement, as a result of the accident described, excluding expenses paid by any collateral source. In this case, State Farm, being in possession of the doctor's report, and Ethel Hanson, not being in possession of it, tendered the release by including in it what is essentially a health and accident insurance form providing for future medical benefits. The evil in the form is that though the releasee may have recovered up to $3,000 for future medical expenses, the release would preclude, and by the holding of the majority here, does preclude, any further recovery for permanent injuries, pain and suffering or other elements of damages that might accrue to the releasee by virtue of the accident.

Absolutely nothing about this feature of the release was discussed or pointed out by the adjuster to Ethel Hanson. If procurement of such a release is a practice of State Farm, and the printed form indicates it is, this Court should condemn that practice right now.

I would reverse this case under the present state of the evidence. I would remand it to the District Court for further proceedings to determine the intent of the releasee at the time the release was signed, and recognize the release only to that extent.

_____<br>
Justice

Mr. Justice William E. Hunt, Sr., concurs in the foregoing dissent.

_____<br>
Justice

# AGREEMENT AND RELEASE

FOR AND IN CONSIDERATION of the payment of the sum of
_Forty Three Hundred and Fifty Two Dollars and 85/_—Dollars, the receipt and sufficiency of which is hereby acknowledged, and of the promise of payment to the undersigned of benefits in accordance with the SCHEDULE OF BENEFITS set forth below, by the Company accepting this Agreement,

## SCHEDULE OF BENEFITS

(1) To pay all reasonable and necessary expenses not to exceed $3,000 incurred for medical, dental or surgical treatment, ambulance, hospital, professional nursing services and prosthetic devices, furnished to the named beneficiary within 180 days following the date of this Agreement, as a result of the accident described herein, provided that such expenses are not paid or payable by any collateral source; and

(2) To pay $ _None_ for each day within 180 days following the date of this Agreement that said beneficiary is continuously and necessarily disabled and confined indoors under the care of a licensed physician other than himself, due to the bodily injury incurred because of the accident described herein (payable monthly); provided that the total of said per diem payments shall not exceed $3,000;

and provided the total amount payable hereunder for this release, plus said expense payments, plus said per diem payments, shall not exceed the limit of liability for bodily injury to one person provided by the policy of insurance applicable to the releasee named herein,

the undersigned hereby releases and forever discharges _Mary Olga_

_____, the Insurance Company accepting this Agreement, and any and all other persons, firms or corporations liable or who might be claimed to be liable, from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, both to person and property, and particularly on account of all injuries, known and unknown, sustained by

_Ethel Hanson_

Named Beneficiary

which have resulted or may in the future develop as a result of an accident which occurred on or about the __8__ day of __May__, 19__85__ at or near _Bozeman, Mt._.

This release expressly reserves all rights of the parties released to pursue their legal remedies, if any, against the undersigned, their heirs, executors, agents and assigns.

It is also agreed and understood that this settlement is the compromise of a doubtful and disputed claim, that the payment is not to be construed as an admission of liability on the part of the persons, firms and corporations hereby released, by whom liability is expressly denied. This Agreement and Release contains the entire agreement between the parties hereto, and the terms of this instrument are contractual and not a mere recital. It is further agreed that all parties to this instrument have carefully read the contents thereof and the signatures below are the voluntary and free act of each.

In witness whereof __we__ have hereunto set __our__ hand(s) and seal(s) this __7__ day of __July__, 19__85__.

IN PRESENCE OF

Signed X _Ethel Hanson_

Signed X _Ben Hanson_

_____
Witness

Accepted By:
- ☒ STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
- ☐ STATE FARM FIRE AND CASUALTY COMPANY
- ☐ STATE FARM COUNTY MUTUAL INSURANCE COMPANY OF TEXAS
- ☐ STATE FARM GENERAL INSURANCE COMPANY

_2C-298-535_
Claim Number

By _Richard G. Brown_
Authorized Representative

_1911.10 ... Bozeman, Mt._
Address

_587-4638_
Telephone Number

G 5355.4 Printed in U.S.A.

EXHIBIT
1