MR. JUSTICE GULBRANDSON
delivered the Opinion of the Court.
Ethel Hanson appeals an Eighteenth Judicial District Court judgment in favor of Mary Oljar and State Farm Mutual Automobile Insurance Company. The District Court found that Ethel Hanson had executed a valid release of all claims relating to an automobile accident and that she was bound by the settlement teftns. We affirm.
Ethel Hanson (Hanson) and Mary Oljar (Oljar) were involved in an automobile accident in Bozeman, Montana, on May 8, 1985. Oljar’s vehicle struck Hanson’s vehicle while Hanson was stopped at an intersection. Both parties were insured by State Farm Mutual Automobile Insurance Company (State Farm). An adjuster for State Farm, Richard Brown (Brown), investigated the accident and determined that Oljar was at fault. Brown also obtained a medical report from Hanson’s doctor which listed Hanson’s permanent disabilities from the accident as “undetermined at this time.” Brown did not discuss the medical report with Hanson.
After several negotiations with Hanson, State Farm, through its adjuster, paid Hanson $4,362.85 for medical expenses, lost wages,' car rental costs, headaches, and inconvenience. In return for the settlement payments, State Farm obtained a general liability release from Ethel Hanson and her husband, Ben Hanson, on July 9, 1985. On July 15, 1985, Hanson sent a thank you note to Brown to express that she was pleased with Brown’s “settlement and prompt service
Unknown to State Farm at the time of settlement, Hanson had retained a Bozeman attorney on May 31, 1985, to represent her with regard to two automobile accidents — the May 1985 accident and an earlier accident in February of 1985. Hanson did not tell the State Farm adjuster about her attorney nor did the attorney contact State Farm about the representation.
On July 18, 1985, Hanson visited her doctor and received a copy of the same medical report sent to Brown. Hanson took the medical report to her attorney and informed him that she had received a settlement and had signed a release. That same day, Hanson’s attorney deposited $1,010.40 in a Bozeman bank payable to State Farm *274 and sent State Farm a document entitled “Tender of Payment and Rescission of Release.” State Farm refused to accept the tender of payment. On April 14, 1986, Hanson filed this lawsuit for rescission of the release and damages.
The District Court held a non-jury trial on April 17, 1987. Thereafter, the District Court made the following findings of fact:
“1. Richard Brown, an adjuster with defendant State Farm, investigated plaintiffs claim of July 19, 1985.
“2. Both Mrs. Hanson and Mrs. Oljar were insured by defendant company. Brown’s investigation revealed that Mrs. Oljar was at fault in the automobile collision.
“3. Mr. Brown was informed of medical bills, lost income and property damage incurred by plaintiff.
“4. Brown talked with plaintiff about medical payments and lost income. He authorized an advance payment of $678.23 on June 13, 1985. Brown paid advances on wages and medical bills when presented by plaintiff. No other bills were presented.
“5. Brown and plaintiff talked about four or five times about the matter.
“6. On July 9, 1985, Brown secured from plaintiff and her husband a release of all claims for the payment of $4,362.85. The document was signed at the Hanson residence. Brown issued drafts for car repair, car rental and a draft to plaintiff for $1,010.40.
'“7. Brown had seen a medical report on plaintiff’s condition prior to obtaining the release on July 9, 1985.
“8. At this meeting, Brown agreed to pay for plaintiff’s car rental expenses and property damage. There were no outstanding medical bills.
“9. Brown did not show the medical report to the plaintiff and does not know if he discussed it with her.
“10. The parties discussed plaintiff’s headaches and inconvenience. Brown offered $700; plaintiff’s counteroffer was $1000. Brown claimed that the release was ‘final and complete’ except for additional medical expenses up to $3000 for 180 days from the date of the agreement.
“11. Brown gave no itemization as to which policy was being assessed for plaintiff’s damages, but Brown authorized all payments to be made under the Oljar policy.
“12. Ben Hanson, plaintiff’s husband, testified that on July 9, 1985, he paid no attention to the conversation between plaintiff and Mr. Brown. He did hear ‘inconvenience’ due to problems renting a car. *275 Mr. Hanson suggested $1000 and Brown agreed. Mr. Hanson does not remember any reference to medical problems. Mr. Hanson did not realize that the release was ‘final’ and claims Brown misrepresented that it was not final.
“13. Mr. Hanson claims that he has to do most of the driving, and his wife is afraid of another collision.
“14. Mr. Hanson admitted that Brown said other medical bills could be paid under the release.
“15. Plaintiff testified that she had two accidents in 1985. The accident in question was the second accident.
“16. Plaintiff retained Mr. McAlear for personal injuries only on May 18, 1985.
“17. Mr. McAlear also represented plaintiff on the first accident and recovered a settlement for personal injuries. Plaintiff settled her own property damage claim.
“18. Plaintiff had not seen any report from Dr. Heetderks, her family physician.
“19. Plaintiff denies that the release was final. For example, she remembers her husband told Brown that the future was uncertain about plaintiff’s injuries.
“20. Plaintiff received the Heetderks report on July 18, 1985, and immediately took it to Mr. McAlear.
“21. Mr. McAlear thereafter tendered back the sum of $1010.40 and deposited the same in an interest-bearing account at First Security Bank.
“22. Plaintiff claims that she suffered headaches which kept her awake at night. She has a fear of having another accident.
“23. Plaintiff admits that she told no one that Mr. McAlear had been retained by her concerning the Oljar accident.
“24. Plaintiff admits to having received, different drafts from Brown.
“25. Plaintiff has not seen a physician for her headaches after signing the release form.
“26. Except for the two 1985 accidents, plaintiff has had no dealings with the insurance adjuster.
“27. After the release was signed, plaintiff wrote a ‘thank you note’ to Mr. Brown.
“28. Brown had no communication with anyone but plaintiff until the July meeting.
“29. Plaintiff did not express any confusion about the form.”
*276 From these findings of fact, the District Court made the following conclusions of law:
“1. The release form is clear and unambiguous. The parties engaged in negotiations as to the final sum. Plaintiff is bound by the terms of the settlement. Defendant’s adjuster was not guilty of any impropriety. Plaintiff shall take nothing by her complaint.
“2. Defendant is awarded costs.”
Hanson raises the following issues on appeal:
(1) Has Montana adopted the modern liberal rule on construction of releases on a single party personal injury case?
(2) What factors should a court consider in determining whether or not a release should be set aside?
From Hanson’s briefs, we identify the following issue on appeal: Can Ethel Hanson’s alleged intent that the release not be a full and final settlement serve to nullify the release? The District Court’s findings of fact are undisputed on this appeal. We must determine from the record of this case whether there is substantial credible evidencé to support the District Court’s findings and conclusions. In re the matter of B.T. (Mont. 1986), [223 Mont. 287,] 725 P.2d 230, 232, 43 St.Rep. 1728, 1730. The District Court will not be reversed unless the findings are clearly erroneous and represent an abuse of discretion. Rule 52(a), M.R.Civ.P.; Walker v. Larson (Mont. 1986), [223 Mont. 333,] 727 P.2d 1321, 1322-23, 43 St.Rep. 1765, 1767.
Hanson urges this Court to adopt a “liberal rule of construction” regarding releases. She derives this “liberal rule” from strained interpretations of several cases regarding releases to argue that her intent was not to make a final settlement. Hanson requests that we examine her intent to conclude that the release should be rescinded.
It is clear from previous decisions of this Court that we must apply the law of contracts to determine the validity of a release such as presented in this case. Westfall v. Motors Insurance Co. (1962), 140 Mont. 564, 568, 374 P.2d 96, 98-99. “[A] release ... is subject to recession for the same reasons as other contracts.” Westfall, 374 P.2d at 98-99. Accordingly, a release obtained through fraud, mutual mistake, or with inadequate consideration may be rescinded under proper circumstances. Krusemark v. Hansen (Mont. 1981), [__ Mont. __,] 627 P.2d 1202, 1205, 38 St.Rep. 594, 598; Westfall, 374 P.2d at 99. No evidence exists in the record of this case to show that the release was entered into fraudulently, through mutual mistake, or without adequate consideration. Hanson declines to argue the available contract theories for rescinding the release saying only that *277 such theories are reversions to outdated principles of law that do not apply to this case.
Hanson’s authority regarding the so-called “liberal rule” of interpreting releases does not support her position. These cases stand for the general proposition that the intent of releasor at the time of the release may be considered as a factor to determine whether a release by an injured party of one tort-feasor thereby releases all concurrent tort-feasors. See e.g., Kussler v. Burlington Northern, Inc. (1980), 186 Mont. 82, 88, 606 P.2d 520, 522-23; McCloskey v. Porter (1973), 161 Mont. 307, 315, 506 P.2d 845, 849. This Court is not presented with an issue in this case to which the above-stated rule might apply.
Hanson’s intent, unknown to Oljar, Brown, or State Farm, cannot change the obvious intent of the release in this case. Richardson v. Safeco Ins. Co. of America (1983), 206 Mont. 73, 669 P.2d 1073, 1075, 40 St.Rep. 1515, 1517. Although the record indicates that Hanson may have some problems or injuries related to the automobile accident for which she might not have been compensated, her “latent discontent with the release cannot be grounds for alteration of [an] express” agreement to settle with State Farm. McCloskey, 506 P.2d at 849-50.
There is substantial credible evidence in the record to support the District Court’s findings and conclusions. Hanson negotiated with State Farm over the terms of the settlement and signed an “Agreement and Release” discharging Oljar and State Farm “from all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever . . . [for] all injuries, known and unknown terms . . .” The District Court correctly concluded that the terms of the agreement and release were clear and unambiguous and that Hanson was bound by those terms.
Affirmed.
MR. CHIEF JUSTICE TURNAGE and MR. JUSTICES HARRISON, WEBER and McDONOUGH concur.